ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com
        wncarlon@packardlawoffices.com

Reed W. Super (State Bar No. 164706)
SUPER LAW GROUP, LLC
180 Maiden Lane, Suite 603
New York, New York 10038
Tel: (212) 242-2355
Fax: (855) 242-7956
E-mail: reed@superlawgroup.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WEST CONTRA COSTA SANITARY LANDFILL, INC.,<br><br>Defendant. | Case No. 3:20-CV-07767-JD (TSH)<br><br>[PROPOSED] CONSENT DECREE<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387)** |

**WHEREAS**, Plaintiff California Sportfishing Protection Alliance (hereinafter "CSPA") is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of California's waters;

**WHEREAS**, Defendants own and/or operate an approximately 340-acre complex consisting of a closed and capped Class I Landfill; a closed Hazard Waste Management Facility; a Corrective Action Management Unit ("CAMU"); a Leachate Treatment Plant; a closed Class II Municipal Solid Waste Landfill; a solid waste transfer station; an organic materials composting facility; and a

1

Construction and Demolition ("C&D") processing operation in Richmond, California (hereinafter "the Facility");

WHEREAS, Defendants' primary industrial activities at the Facility are limited to the composting facility and the C&D processing area;

WHEREAS, the closed Class II landfill portions of the Facility collect and discharge storm water from the landfill side slopes into San Pablo Bay and San Pablo Creek[1];

WHEREAS, a site map of the Facility is attached hereto as **Exhibit A** and incorporated herein by reference;

WHEREAS, CSPA and Defendant collectively shall be referred to as the "Parties;"

WHEREAS, storm water discharges associated with industrial activity are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001, State Water Resources Control Board ("State Board") Water Quality Order No. 14-57-DWQ, issued pursuant to Section 402(p) of the Clean Water Act ("Act"), 33 U.S.C. §1342(p), (hereinafter "General Permit") and, prior to July 1, 2015, were regulated by Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order 92-12-DWQ and 97-03-DWQ;

WHEREAS, on or about August 24, 2020, Plaintiff provided notice of Defendants' alleged violations of the Act ("Clean Water Act Notice Letter"), and of its intention to file suit against Defendants to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the U.S. Attorney General; the Executive Director of the State Board; the Executive Officer of the Regional Water Quality Control Board, North Coast Region ("Regional Board"); and to Defendants, as required by the Act, 33 U.S.C. § 1365(b)(1)(A) (a true and correct copy of CSPA' Clean Water Act Notice Letter is attached hereto as **Exhibit B** and incorporated herein by reference);

WHEREAS, Defendants deny the occurrence of the violations alleged in the Clean Water

---

[1] The south and portions of the southwest slopes of the Closed Class II landfill discharge storm water to a 68-acre lagoon on the south side of the Facility, which is referred to as Pond B on the mapping incorporated herein. The Parties do not agree on the issue of whether Pond B is, or discharges to, a "Water of the United States" and no Party may use this Decree as evidence to prove or disprove whether Pond B is, or discharges to, a Water of the United States. See also §14.1 herein regarding the Plaintiff's covenant not to sue Defendants on jurisdictional claims regarding the status of Pond B and unlined Pond A (which flows to Pond B) during the term of this Consent Decree.

Act Notice Letter and maintain that they have complied at all times with the provisions of the General Permit and the Clean Water Act;

WHEREAS, the Parties agree that it is in their mutual interest to resolve this matter as to all entities and persons named in the Clean Water Act Notice Letter without litigation and enter into this Consent Decree ("Decree");

WHEREAS, on or about November 3, 2020, CSPA filed a complaint against Defendants in the United States District Court, Northern District of California (this matter is hereinafter referred to as "the Action");

WHEREAS, the Parties agree that by entering into this Decree Defendants do not make any admission of liability regarding the claims made by Plaintiff in the Action, and compliance with this Decree shall not be deemed to be compliance with the General Permit or the Clean Water Act;

WHEREAS, within five (5) calendar days of mutual execution, this Decree shall be submitted to the United States Department of Justice ("USDOJ") for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c);

WHEREAS, at the time the Decree is submitted to the USDOJ, Plaintiff shall file a Notice of Settlement to notify the Court of the expected date of the expiration of the agencies' statutory review period identified above;

AND WHEREAS, within ten (10) calendar days of expiration of the statutory review period, or the earlier receipt of non-objection from the United States Department of Justice, Plaintiff shall file with the Court a Notice of Approved Consent Decree and Proposed Order requesting that the Court sign and enter the Consent Decree and dismiss the claims herein with prejudice (the date of entry of this Consent Decree shall be referred to herein as the "Court Entry Date").

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES, AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

For the purposes of this Consent Decree, the Parties agree that:

(a) the Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

3

(b) venue is appropriate in the United States District Court for the Northern District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

(c) the Complaint states claims upon which relief may be granted against Defendants pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365; without stipulating to jurisdiction of this action predicated on the alleged violations, which Defendants deny, Defendant West Contra Costa Sanitary Landfill, Inc. stipulates for the purposes of this compromise settlement that the Court has jurisdiction to issue a dismissal based on the stipulated Consent Decree;

(d) Plaintiff has standing to bring this action; and,

(e) the Court shall retain jurisdiction over this matter for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## COMMITMENTS OF DEFENDANT WCCSL

**1.      Compliance with General Permit and the Clean Water Act**.  Throughout the term of this Decree, Defendant West Contra Costa Sanitary Landfill, Inc. ("WCCSL") shall implement all measures needed to operate the Facility in compliance with the requirements of the General Permit and the Clean Water Act, subject to any defenses available under the law.

**2.      Implementation of Specific Storm Water Best Management Practices**.  Unless otherwise indicated below, on or before **November 1, 2021**, WCCSL shall complete the implementation and incorporation into the Facility's Storm Water Pollution Prevention Plan ("SWPPP") of the following storm water source control measures and Best Management Practices ("BMPs") at the Facility:

a. *Mandatory Minimum Best Management Practices*.  WCCSL shall implement all mandatory minimum BMPs in accordance with Section X.H of the General Permit, including but not limited to, additional BMPs to prevent the spreading of trash, green waste,

compost, debris, tracked materials, leaked materials or any other materials on the slopes or surfaces of the Facility; minimize or prevent the tracking of pollutants on exposed road surfaces, within the Facility; cover all stored material that can be readily mobilized by contact with storm water (General Permit, Section X.H.1.a.v); contain all "stored non-solid industrial materials or wastes" that can be "transported or dispersed by the wind or contact water" (General Permit, Section X.H.1.d.vi); and minimize erosion by providing effective stabilization for all inactive areas, finished slopes and other erodible areas of the Facility prior to all forecasted storm events.

      b.  *Additional Best Management Practices*.  WCCSL shall implement the following BMPs:

    1.  **Annual Swale Clean Out:** clear out and remove dead vegetation, debris, weeds, accumulated sediment, etc. from WCL-11C, WCL-11D, WCL-11E, WCL-11F, WCL-11G, and WCL-11J (hereafter "the WCL-11 Outfalls") and WCL-8.  For the WCL-11 Outfalls, this includes the down drain swales (from the top of the primary slope to the Outfall Basin).  For WCL-8, this includes upstream drainage swales and culverts to remove accumulated sediment/debris.

    2.  **Annual Outfall Location Clean Out**: clear out and remove dead vegetation, debris, weeds, accumulated sediment, etc. from the WCL-11 Outfalls and WCL-8 and any pipes or other conveyances in the surrounding area.  For the WCL-11 Outfalls, this includes the Outfall Basin and surrounding areas.  For WCL-8, this includes the discharge/sampling location and surrounding area.

    3.  **Installation of Nutrient-Targeting Socks in Facility Swales**.  WCCSL shall install Filtrexx® filter socks with <u>NutriLoxx</u>® media in swales perpendicular to the flow of water, includes down swales (from the top of the slope to the Outfall Basin).  All such NutriLoxx socks shall be placed in a chevron (shallow U-shape) configuration to provide in-line filtration, and consecutively in the same flow line or drainage path at approximately 50-foot intervals.  Closer spacing, at approximately 30-foot intervals shall be used for outfalls of concern (WCL-11C, WCL-11E, WCL-11G).  If socks are not of sufficient weight to resist the flow of water in the area, weights such as gravel bags shall be used to ensure the socks stay in place.

    4.  **Installation of Block and Gravel Filters as Outfall Protection**.  WCCSL shall install concrete blocks abutting on their sides, off-set approximately 12-inches from each Outfall opening, in a single layer and field fit blocks around the outfall.  Wire mesh or filter fabric shall be installed over the outside

vertical face.  For outfalls WCL-11C, WCL-11E, WCL-11G, the NutriLoxx socks shall abut the wire mesh.  Coarse aggregate (1"-2" clean stone free of fine material that could contribute to TSS) shall be installed against the wire mesh to the top of the barrier.

5. **Improvements at WCL-8.**  WCCSL shall install a check dam weir at WCL-8 approximately 10-feet downstream from the existing culvert outlet, comprising a concrete wall in a v-ditch formation in the channel (perpendicular to the flow of water) to intercept runoff, remove sediment, and reduce flow velocity.  A bottom layer of gravel bags shall be installed end to end to form a barrier across the WCL-8 discharge channel (estimated to span approximately 12-14 feet).  The weir shall also include a gap in the top of wall to provide a spillway/weir for overflow and 6"-12" clean riprap shall be installed between the WCL-8 outlet pipe and the check dam weir.

6. **Installation of Rock Filter Berms.**  WCCSL shall install a series of rock filter berms/rock check dams in the swales upstream of WCL-8, and perpendicular to the flow of water, using two differing sizes of rock.  The first rock filter berm shall be placed in the swale after the first culvert outlet downstream from the riser (northwest of the scale house building), with subsequent rock filter berms spaced at approximately 50-foot intervals.  The smaller rock (2-3" rock) shall be placed on the upstream side of the berm (receiving flow) to act as a filter.  The larger rock (6" rock) shall be placed on the downstream side of the berm to stabilize the berm and hold it in place. All rock should be clean and free of fine material that could contribute to TSS.  The stone shall be keyed into the ditch banks and extended beyond the abutments a minimum of 18 inches to avoid washouts from overflow around the berm/dam.  The rock filter berm height shall be between 18 inches and 36 inches, with approximately 12" of freeboard at the top of swale.  The center of the berm shall be at least 6 inches lower than the outer edges to promote a "weir" effect.

c.   *Targeted Run-Off Characterization Study to Determine Advanced Best Management Practices for Implementation on or before **October 1, 2022**.*  During the 2021-2022 wet season, WCCSL shall undertake a study to characterize the side slope runoff from the upper slope areas of the closed WCCSL Class II landfill, located below the compost top deck operation, on the north and northwest side slopes (a true and correct copy of the project description for the study is attached hereto as **Exhibit C**).  On or before July 1, 2022, WCCSL shall provide CSPA with a preliminary draft report for its review and comment.  Plaintiff will provide comments and input, in its discretion, on or before July 15, 2022.  The parties will meet and confer on or before

1   August 1, 2022 to review the results and discuss appropriate advanced BMPs to be implemented on

2   or before **October 1, 2022**.

3           d.   *Re-Routing of Storm Water Discharges from C&D Area Drainage away from*

4   *Lined Pond A and into Pond A.*   Plaintiff has alleged that storm water flows from the Construction

5   and Debris ("C&D") Yard flow to lined Pond A (which receives contact water from the compost

6   facility operation, which contact water Plaintiff alleges (1) is required by law to be managed in lined

7   Pond A in accordance with Regional Water Quality Control Board ("RWQCB") and State Water

8   Resources Control Board ("SWRCB")  stormwater requirements for permitted compost facilities,

9   and (2) cannot lawfully be discharged from the Facility.  WCCSL represents that it has re-routed all

10  surface flows from the C&D area drainage away from lined Pond A and into unlined Pond A and/or

11  Pond B.  In the interests of avoiding capacity exceedance events at lined Pond A, and unless

12  otherwise ordered by the RWQCB or a government agency with jurisdiction, WCCSL agrees to

13  continue to route all such flows away from lined Pond A into unlined Pond A and/or Pond B for the

14  term of this Decree, including extensions to the term.

15          e.  *Repair of Subsurface Storm Water Conveyance In Southwest Corner of C&D*

16  *Yard*.   On or before **October 1, 2021**, WCCSL shall inspect and repair the piping running through

17  the southwest corner of the C&D Yard to prevent the seepage of storm water from that system from

18  escaping to the surface of the Facility.  Within thirty (30) days of the completion of this inspection

19  and repair project, WCCSL shall notify CSPA of the project's completion, and provide a written

20  report documenting the results of the inspection and repair, including photographic documentation

21  of the project, under the Notice terms of the Decree.

22          f.   *Implementation of Alternative Flow Regime for Water Applied to Tarmac Area of*

23  *the Waste Transfer Station Drainage Area.*  WCCSL shall modify the flow regime for the Transfer

24  Station building's exterior tarmac adjacent to the tipping floor such that all non-storm waters

25  applied to the area, including those used for fire suppression activities, will be prevented from

26  flowing on the Transfer Station's exterior tarmac to associated perimeter storm drain inlets.

27  Instead, all non-storm water on the Transfer Station tarmac shall be directed to flow away from the

28  perimeter storm drain inlets to either (1) the Transfer Station's interior drains (which shall be routed

7

1   to existing holding tanks located beneath the Transfer Station and periodically removed for off-site

2   disposal) or (2) to Lined Pond A in circumstances where the Transfer Station holding lacks capacity

3   or the drains to the holding tanks cannot be accessed.

4            g.   *Source Controls to Prevent Airborne Deposition of Trash, Debris and Other Solid*

5   *Wastes from the Facility Composting Operations.*  Beginning on or before **September 1, 2021**, and

6   continuing for the term of this decree, WCCSL shall use the following abatement devices to

7   improve pollution source controls: (1) a 5-foot litter fence around the entire compost deck, which

8   shall be monitored on a weekly basis during the Wet Season (October 1 – May 31) for maintenance

9   and repair needs; (2) use of equipment screens, where such screen is an included component of the

10  equipment, at all times when the applicable compost processing equipment is operating to prevent

11  the airborne dispersal of overs and fines; and (3) the use of portable litter fences around the

12  perimeter of the active composting processing operations area, which may be re-positioned, as

13  needed, on a daily basis (the active composting processing area is identified on the Facility Map

14  attached hereto as **Exhibit A**).

15           h.   *Facility Mapping*.  On or before **September 30, 2021**, WCCSL agrees to revise

16  the Site Map appended to the current SWPPP to comply with all of the requirements in Section

17  X.E.1-3 of the General Permit and for use in documenting this Decree.

18           i.   *Increased Employee Certification and Training.* On or before **October 1, 2021**,

19  WCCSL shall modify the Facility SWPPP to require increased training for its Storm Water Pollution

20  Prevention Team ("SWPPT"), including holding two training sessions each "wet season" year for the

21  entire SWPPT and any other employees responsible for implementing the SWPPP, with one held in

22  approximately September and one held in approximately January of each year for the term of this

23  Decree.  WCCSL shall target this training on understanding the IGP and current SWPPP, including

24  any recent revisions thereto; understanding the IGP's prohibition against unauthorized non-storm

25  water discharges; reviewing the waste Transfer Station's emergency procedures for non-storm water

26  uses in the Transfer Station (see Section 2.(b) above); tracking storm forecasts, and identifying which

27  of these events qualify for sampling purposes; undertaking visual monitoring; and logging and

28  properly reporting data in the Facility's SWPPP, Annual Report and the State's on-line reporting

system ("SMARTS").  WCCSL shall log all training sessions and other SWPPT meetings with the date, materials covered, written agenda, and a list of attendees for each, and shall retain these logs with the SWPPP.  At all times during the term of this Decree, WCCSL shall have at least one member of the SWPPT that works full time during normal operating hours at the Facility, that is formally certified as a Qualified Industrial Storm Water Practitioner ("QISP").

j. *Rain Data*.  On or before **September 1, 2021,** WCCSL shall install and maintain a fully automated rain gauge at the Facility.  Data from the gauge shall be stored electronically and accessible to the SWPPT at all times during the term of this Decree.  The Parties may also use publicly available rain data to resolve any disputes arising under this Decree.

k. *Improved Good Housekeeping Practices Required Under Section X.H.1.a of the Industrial General Permit.*  On or before **October 1, 2021,** WCCSL shall revise the SWPPP to specify each Good Housekeeping BMP, together with where, how and by whom it shall be implemented, if applicable.  These SWPPP revisions shall include all measures taken to comply with Paragraph 2(a), above.

l.  *Enhanced Visual Monitoring and Response Planning to Prevent the Discharge of Leachate from the Facility; Notice to CSPA in the Event of Leachate Discharge or Potential Leachate Discharge.*  Defendant shall incorporate in the Facility SWPPP procedures and controls to identify and immediately eliminate any discharges, or circumstances likely to create potential discharges, of any materials containing leachate from the Facility.  These procedures and controls shall include, at a minimum, weekly visual monitoring of the Facility, which shall note the date, time and person undertaking the inspection in inspection logs maintained by the Facility, in the SWPPP; response procedures and equipment to be used in the event of any discharges, or potential discharges, of materials containing leachate.  In the event that Defendant becomes aware of any actual or potential offsite discharge of leachate from the Facility during the Term of this Decree, Defendant shall notify CSPA in writing through the Notice provisions of this Decree, a soon as practicable and within ten (10) days of Defendant's becoming aware of the actual or potential discharge.

**3.**    **SWPPP Amendments**.  Within 60 days of the entry of this Consent Decree,

9

1   WCCSL shall amend the Facility SWPPP to incorporate all of the relevant requirements of this

2   Consent Decree and the General Permit.  These revisions shall reflect all then-current site

3   conditions and practices and identify potential Contaminants of Concern ("COC"), identify the

4   location of all pervious and impervious areas, drop inlets, BMPs, and storm water flow vectors.

5   These revisions shall also provide for required data logging; weekly monitoring and maintenance of

6   all Facility collection and discharge points during the Wet Season; and the twice-annual storm water

7   management training for Facility employees referenced above.

8          **4.      Sampling Frequency during the Term of this Decree**.   Subject to the provisions

9   of paragraph 16 herein (Force Majeure), for the 2021-2022 and 2022-2023 reporting years ending

10  June 30th (2022 and 2023), WCCSL shall collect and analyze samples at the Facility from three (3)

11  Qualifying Storm Events[2] ("QSEs") within the first half of each reporting year (July 1 to December

12  31), and three (3) QSEs within the second half of each reporting year (January 1 to June 30).[3]  The

13  storm water sample results shall be compared with the values set forth in **Exhibit D**, attached

14  hereto, and incorporated herein by reference.  If the results of any such samples exceed the

15  parameter values set forth in **Exhibit D**, WCCSL shall comply with the "Action Memorandum"

16  requirements set forth below.  Lack of adequate rainfall to generate three QSEs shall be deemed an

17  event of Force Majeure, and in such event, the provisions of this paragraph shall be deemed

18  modified to apply only to the number of QSEs occurring.  Defendant shall provide a notice and

19  explanation on or before January 15 indicating the required 3 samples were not collected as a result

20  of lack of rainfall producing three QSEs.

21         **5.      Sampling Parameters**.  All six (6) samples in each reporting year shall be analyzed

22  for each of the constituents listed in **Exhibit D**, including TMDLs, as applicable, by a laboratory

23  accredited by the State of California.  All samples collected from the Facility shall be delivered to

24  the laboratory as soon as possible to ensure that sample "hold time" is not exceeded.  Analytical

25  methods used by the laboratory shall comply with General Permit requirements in regard to both

26  _____

27  [2] A Qualifying Storm Event (QSE) is defined in the Industrial General Permit as a precipitation event that:
    (a) produces a discharge from at least one drainage area; and (b) is preceded by 48 hours with no discharge
28  from any drainage area.  *See* General Permit, Section XI(b)(1).
    [3] In the event that there are too few QSEs in any given reporting year for WCCSL to collect these samples,
    the Parties will meet and confer.  *See* § 6 below.

1    test method and detection limit.  See General Permit, Table 2, at 43.  Sampling results shall be

2    provided to CSPA within ten (10) days of WCCSL's receipt of the laboratory report from each

3    sampling event, pursuant to the Notice provisions below.

4         **6.**     **"Action Memorandum" Trigger; CSPA Review Of "Action Memorandum";**

5    **Meet-and-Confer.**  If any sample taken during the two (2) reporting years referenced in Paragraph

6    4 above exceeds the Evaluation Levels set forth in **Exhibit D**, or if WCCSL fails to collect and

7    analyze samples from six (6) QSEs, then except as provided in section 4 above with respect to lack

8    of rainfall as Force Majeure, WCCSL shall prepare a written statement discussing the exceedance(s)

9    and/or failure/inability to collect and analyze samples from six (6) storm events, the possible cause

10   and/or source of the exceedance(s), and additional measures that will be taken to address and

11   eliminate or reduce potential future exceedances and/or failures to collect required samples ("Action

12   Memorandum").

13        The Action Memorandum shall be provided to CSPA not later than July 15 following the

14   conclusion of each reporting year, on July 15, 2022 and July 15, 2023.  Such additional measures

15   referenced above may include, but are not limited to, further material improvements to the storm

16   water collection and discharge system, changing the type and frequency of Facility sweeping,

17   changing the type and extent of storm water filtration media or modifying other industrial activities

18   or management practices at the Facility.  Such additional measures, to the extent feasible, shall be

19   implemented as soon as possible and in no event later than ninety (90) days after the due date of the

20   Action Memorandum unless additional time is reasonably required.  Within seven (7) days of

21   implementation, the Facility SWPPP shall be amended to include all additional BMP measures

22   designated in the Action Memorandum.

23        CSPA may review and comment on an Action Memorandum and suggest any additional

24   pollution prevention measures it believes are appropriate; however, CSPA' failure to do so shall not

25   be deemed to constitute agreement with the proposals set forth in the Action Memorandum.  Upon

26   request by CSPA, WCCSL agrees to meet and confer in good faith (at the Facility, if requested by

27   Plaintiff) regarding the contents and sufficiency of the Action Memorandum.

28        **7.**     **Inspections During The Term Of This Decree**.  In addition to any site inspections

conducted as part of the settlement process, for purposes of the meet-and-confer process concerning an Action Memorandum as set forth above, WCCSL shall permit representatives of CSPA to perform up to three (3) physical inspections of each Facility if reasonably needed during the term of this Decree.  These inspections shall be performed by CSPA's counsel and consultants and may include sampling, photographing, and/or videotaping and CSPA shall provide WCCSL with a copy of all sampling reports, photographs and/or video.  CSPA shall provide at least seventy-two (72) hours advance notice of such physical inspection, except that WCCSL shall have the right to deny access if circumstances would make the inspection unduly burdensome and/or pose significant burden or interfere with business operations or on any party/attorney, or the safety of individuals. In such case, WCCSL shall specify at least three (3) dates within the two (2) weeks thereafter upon which a physical inspection by CSPA may proceed.  WCCSL shall not make any alterations to Facility conditions during the period between receiving CSPA' initial seventy-two (72) hour advance notice and the start of CSPA's inspection that WCCSL would not otherwise have made but for receiving notice of CSPA's request to conduct a physical inspection of the Facility, excepting any actions taken in compliance with any applicable laws or regulations.  Nothing herein shall be construed to prevent WCCSL from continuing to implement any BMPs identified in the SWPPP during the period prior to an inspection by CSPA or at any time.

**8.    Communications To/From Regional and State Water Boards.**  During the term of this Decree, WCCSL shall provide CSPA with courtesy copies of all documents submitted or uploaded to, or received from, the Regional Water Board or the State Water Board concerning storm water discharges from the Facility, including, but not limited to, all documents and reports submitted or uploaded to the Regional Water Board and/or State Water Board as required by the current General Permit.  Such documents and reports shall be provided to CSPA via email pursuant to the Notice provisions set forth below contemporaneously with WCCSL's submission(s) or uploads(s) to, or, receipt from, such agencies.

**9.    SWPPP Amendments.**  Pursuant to the Notice provisions set forth below, WCCSL shall provide CSPA with a copy of any amendments to the Facility SWPPP made during the term of

the Decree within fourteen (14) days of such amendment.

## II.    MITIGATION, COMPLIANCE MONITORING, AND FEES AND COSTS

**10.    Mitigation Payment In Lieu Of Civil Penalties Under the Clean Water Act.** As mitigation to address any alleged potential harms from the Clean Water Act violations alleged in the Action, WCCSL agrees to pay the sum of $80,000 for projects to improve water quality in the San Pablo Bay watershed. One half of these mitigation funds shall be remitted directly to the Watershed Project at: 1327 South 46th Street, Building 155, Richmond, CA 94804 within ten (10) days after the Court Entry Date. One half of these funds shall be remitted directly to the Rose Foundation for Communities and the Environment at: Rose Foundation, Attn: Tim Little, 201 4th Street, Suite 102, Oakland, CA 94607-4369 within ten (10) days after the Court Entry Date.

**11.    Compliance Monitoring Funding.** To defray CSPA' reasonable investigative, expert, consultant and attorneys' fees and costs associated with monitoring WCCSL's compliance with this Decree, WCCSL agrees to pay the sum of $15,000 to a compliance monitoring fund maintained by counsel for CSPA as described below. Payment shall be made payable to the "Law Offices of Andrew L. Packard Attorney-Client Trust Account" and remitted to Plaintiff's counsel at the Notice address provided herein within fifteen (15) days after the Court Entry Date. Compliance monitoring activities may include, but shall not be limited to, site inspections, review of water quality sampling reports, review of annual reports, discussions with WCCSL concerning the ERA reports referenced above, and potential changes to compliance requirements herein.

**12.    Reimbursement of Fees & Costs.** WCCSL agrees to reimburse CSPA in the amount of $130,000 to defray CSPA' reasonable investigative, expert, consultant, and attorneys' fees and costs, and all other costs incurred as a result of investigating the activities at the Facility, bringing the action, and negotiating a resolution of this action in the public interest. Payment shall be made payable to the "Law Offices of Andrew L. Packard Attorney-Client Trust Account" and remitted to Plaintiff's counsel at the Notice address provided herein within fifteen (15) days after the Court Entry Date.

## III.    DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT DECREE

**13.    If** a dispute under this Decree arises, or either Party believes that a breach of this

1    Decree has occurred, the Parties shall meet and confer within seven (7) days (or such other period

2    on which the Parties may agree) of receiving written notification from the other Party of a request

3    for a meeting to determine whether a breach has occurred and to develop a mutually agreed upon

4    plan, including implementation dates, to resolve the dispute.  If the Parties fail to meet and confer,

5    or the meet-and-confer does not resolve the issue, after at least seven (7) days have passed after the

6    meet-and-confer occurred or should have occurred, either Party shall be entitled to all rights and

7    remedies under the law, including filing a motion with the District Court of California, Northern

8    District, which shall retain jurisdiction over the Action until the Termination Date for the limited

9    purposes of enforcement of the terms of this Decree.  The Parties shall be entitled to seek fees and

10   costs incurred in any such motion, and such fees and costs shall be awarded to either party, pursuant

11   to the provisions set forth in the then-applicable federal Clean Water Act and Rule 11 of the Federal

12   Rules of Civil Procedure, and applicable case law interpreting such provision.

13       **14.    CSPA's Waiver and Release.**  Upon the Court Entry Date of this Decree, CSPA,

14   on its own behalf and on behalf of its members, subsidiaries, successors, assigns, directors, officers,

15   agents, attorneys, representatives, and employees, releases WCCSL and its officers, directors,

16   employees, shareholders, parents, subsidiaries, and affiliates, and each of its predecessors,

17   successors and assigns, and each of their agents, attorneys, consultants, and other representatives

18   (each a "Released WCCSL Party") from, and waives all claims arising from or pertaining to the

19   Notice Letters, including, without limitation, all claims for injunctive relief, damages, penalties,

20   fines, sanctions, mitigation (including all fees of attorneys, experts, and others, and costs per

21   Section II above), or any other sum incurred or claimed or which could have been claimed under the

22   Clean Water Act (including claims regarding the General Permit) in this Action, for the alleged

23   failure of WCCSL to comply with the Clean Water Act at the Facility, up to the Court Entry Date.

24       **14.1    Covenant Not to Sue.**  Plaintiff covenants not to sue or take any judicial action, to

25   pursue any claim, enter any order or make any demand through and including the termination of this

26   Consent Decree, against the WCCSL, or any of its affiliates, owners, officers, managers, principals,

27   directors, employees, agents, insurers, contractors, consultants, attorneys, predecessors, successors,

28   or ultimate parent companies for claims or causes of action alleging that Unlined Pond A and/or

Pond B located at the Facility are a jurisdictional water of the United States or a water of the State of California.  This Covenant shall inure to the benefit of and pass with each and every portion of the Property and shall benefit any respective successors and assignees thereof.  This covenant shall not prohibit CSPA from participating as a member of the public in any administrative actions which may be brought against WCCSL by administrative agencies during the term of this Consent Decree.

**15.    WCCSLs' Waiver and Release.**  WCCSL, on its own behalf and on behalf of any Released WCCSL Party under its control, releases CSPA (and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representative) from, and waives all claims which arise from or pertain to the Action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to the Action.

**16.    Force Majeure**.  No Party shall be considered to be in default in the performance of any of its obligations under this Agreement when performance becomes impossible or infeasible due to circumstances beyond the Party's control, including Force Majeure, which includes any act of god, epidemics, pandemics, war, fire, drought, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or by any order of a public authority or agency; action or non-action by, or inability to obtain the necessary authorizations, approvals, or permits from, any governmental agency, including Contra Costa County; or inability to obtain equipment or materials from the marketplace if such materials or equipment are not reasonably available, though the cost of such material or equipment is not a factor in whether it is reasonably available.  Impossibility and/or Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay, although economic feasibility is a factor in determining if a Party has implemented BAT and/or BCT.

The proposed structural BMPs described in this Agreement may require building permits and other permits from the County or the City of Richmond dependent upon location. They may also require modifications to the Facility's Solid Waste Facilities Permit by the County Local Enforcement Agency.  WCCSL cannot lawfully construct any individual structural BMP for which

permits are required from the County or City until the final permit(s) for that individual BMP has been issued.  Should any such permit for an individual structural BMP not be issued by the County or City within the time period needed to reasonably meet the applicable compliance deadline in this Consent Decree, the time permits for compliance in this Consent Decree shall be reasonably extended to account for such delay.  In such case, CSPA may elect to extend the Termination Date of this Consent Decree by the same amount of time, and WCCSL shall pay additional Compliance Monitoring funds at the same annual rates (applied pro rata for any portion of a year the Consent Decree is extended) as provided by § 11 of this Consent Decree.  Should the County or City decline to issue any such permit, the parties shall meet and confer regarding an alternative BMP designed to achieve the same pollution control effectiveness as the original BMP.  WCCSL shall exercise its best efforts to timely obtain all such permits and, where available, shall pay expedited permit processing fees.

Any Party seeking to rely upon this § 16 to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to overcome the failure or performance.  Delay in compliance with a specific obligation under this Agreement due to impossibility and/or Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Agreement.

16.1    If WCCSL claims compliance was or is impossible, they shall notify Plaintiff in writing as soon as possible, but in no event more than fifteen (15) business days of the date that WCCSL learns of the event or circumstance that caused or would cause a violation of this Agreement (hereinafter referred to as the "Notice of Nonperformance").

16.2    The Notice of Nonperformance shall include a detailed description of the reason for the nonperformance and the specific obligations under the Agreement that are or have been affected by the Force Majeure. They shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by WCCSL to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. WCCSL shall adopt all reasonable measures to avoid and minimize such delays.

16

16.3    The Parties shall meet and confer in good faith within ten (10) calendar days concerning the non-performance and, where the Parties concur that performance was or is impossible due to an event or matter covered under the Force Majeure provisions of this Agreement, despite the timely good faith efforts of WCCSL, new deadlines shall be established.

16.4    If Plaintiff disagrees with WCCSL's Notice of Nonperformance, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, either Party shall have the right to invoke the dispute resolution procedures herein pursuant to § 13.

**IV.    <u>MISCELLANEOUS PROVISIONS</u>**

**17.**    The Parties enter into this Decree for the purpose of avoiding prolonged and costly litigation of the Clean Water Act claims in the Action.  Nothing in this Decree shall be construed as, and WCCSLs expressly do not intend to imply, an admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Decree constitute or be construed as an admission by WCCSL of any fact, finding, conclusion, issue of law, or violation of law.  However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Decree.

**18.**    This Decree shall be effective upon mutual execution by all Parties and entry by the Court as described above.  This Decree shall terminate on the "Termination Date," which shall be **November 1, 2023** (except for the purposes of enforcing the terms of the Decree).

**19.**    This Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.  An executed copy of this Decree shall be valid as an original.

**20.**    In the event that any one of the provisions of this Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

**21.**    The language in all parts of this Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  This Decree shall be construed pursuant to the law of the United Sates, without regard to choice of law principles.

**22.**    The undersigned are authorized to execute this Decree on behalf of their respective Parties and have read, understood and agreed to be bound by all of the terms and conditions of this

Decree.

23.     All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Decree are contained herein.  This Decree and its attachments are made for the sole benefit of the Parties, and no other person or entity shall have any rights or remedies under or by reason of this Decree, unless otherwise expressly provided for therein.

24.     **Notices.**  Any notices or documents required or provided for by this Decree or related thereto that are to be provided to CSPA pursuant to this Decree shall be sent by electronic mail transmission to the email addresses listed below:

William Jennings, Executive Director - E-mail: deltakeep@me.com

With copies sent to:
Andrew L. Packard - E-mail: andrew@packardlawoffices.com
William N. Carlon - E-mail: wncarlon@packardlawoffices.com

Any notices or documents required or provided for by this Decree or related thereto that are to be provided to WCCSL pursuant to this Decree shall be sent by electronic mail transmission to the email addresses listed below:

Mr. Rob Sherman
General Manager, WCCSL
One Parr Boulevard (Foot of Parr Blvd)
Richmond, CA 94806
RSherman@republicservices.com

With copies sent to:
Judith George, Esq.
Senior Corporate Counsel
Safety, Sustainability & Environmental Services
18500 North Allied Way
Phoenix, AZ 85054
jgeorge4@republicservices.com

And

Scott W. Gordon, Esq.
swgordon@tbsglaw.com" swgordon@tbsglaw.com

Each Party shall promptly notify the other of any change in the above-listed contact information.

**25.**    Signatures of the Parties transmitted by facsimile or email shall be deemed binding.

**26.**    If for any reason the Court should decline to approve this Decree in the form presented, the Parties shall use their best efforts to work together to modify the Decree within thirty (30) days so that it is acceptable to the Court.  If the Parties are unable to modify this Decree in a mutually acceptable manner, this Decree shall become null and void.

**27.**    This Decree shall be deemed to have been drafted equally by the Parties, and shall not be interpreted for or against any Settling Party on the ground that any such party drafted it.

**28.**    This Decree and the attachments contain all of the terms and conditions agreed upon by the Parties relating to the matters covered by the Decree, and supersede any and all prior and contemporaneous agreements, negotiations, correspondence, understandings, and communications of the Parties, whether oral or written, respecting the matters covered by this Decree.  This Decree may be amended or modified only by a writing signed by the Parties or their authorized representatives.

The Parties hereto enter into this Decree and respectfully submit it to the Court for its entry.

Dated: _10 August_, 2021          CALIFORNIA SPORTFISHING PROTECTION

ALLIANCE

By: _____

William Jennings, Executive Director

Dated: _____, 2021          WEST CONTRA COSTA SANITARY LANDFILL, INC.

By: _____

Michael A. Caprio, Vice President

19

25.    Signatures of the Parties transmitted by facsimile or email shall be deemed binding.

26.    If for any reason the Court should decline to approve this Decree in the form presented, the Parties shall use their best efforts to work together to modify the Decree within thirty (30) days so that it is acceptable to the Court. If the Parties are unable to modify this Decree in a mutually acceptable manner, this Decree shall become null and void.

27.    This Decree shall be deemed to have been drafted equally by the Parties, and shall not be interpreted for or against any Settling Party on the ground that any such party drafted it.

28.    This Decree and the attachments contain all of the terms and conditions agreed upon by the Parties relating to the matters covered by the Decree, and supersede any and all prior and contemporaneous agreements, negotiations, correspondence, understandings, and communications of the Parties, whether oral or written, respecting the matters covered by this Decree. This Decree may be amended or modified only by a writing signed by the Parties or their authorized representatives.

The Parties hereto enter into this Decree and respectfully submit it to the Court for its entry.

Dated: _____, 2021        CALIFORNIA SPORTFISHING PROTECTION
                              ALLIANCE

                              By:    _____
                                     William Jennings, Executive Director

Dated: _____, 2021        WEST CONTRA COSTA SANITARY LANDFILL, INC.

                              By:    _____
                                     Michael A. Caprio, Vice President

19

APPROVED AS TO FORM:

Dated: _August 11_ 2021                    LAW OFFICES OF ANDREW L. PACKARD

                                          By: _____

                                              Andrew L. Packard
                                              Attorneys for Plaintiff
                                              CALIFORNIA SPORTFISHING PROTECTION
                                              ALLIANCE

Dated: _August 11_ 2021                    LAW OFFICES OF SCOTT W. GORDON, A Professional
                                          Corporation

                                          By: _____

                                              Scott W. Gordon
                                              Attorney for Defendants
                                              WEST CONTRA COSTA SANITARY
                                              LANDFILL, INC., ROB SHERMAN, ED
                                              BAQUERIZO, and ROBERT BOYER

Good cause appearing, **IT IS SO ORDERED.**

Dated: October 6 2021

                                          By: _____

                                              Hon. James Donato
                                              United Stated District Court
                                              Northern District of California


**EXHIBIT A – Facility Site Map**

**EXHIBIT B – CWA Notice of Violation and Intent to Sue Letter**

**EXHIBIT C – Project Description for Targeted Side-Slope Run-Off Study**

**EXHIBIT D -- Testing Parameters**

20

**EXHIBIT A – Facility Site Map**



SITE

CONTRA
COSTA
COUNTY

S:\REPUBLIC—NORTHERN CALIFORNIA\GOLDEN BEAR_C100292\UPDATE STORM WATER PLAN_PROJ100427\CAD\100427—SWPPP—FIGURE 1.DWG
6/29/201515:36:35

| 0 | 1500 | 3000 |
|---|---|---|

APPROX. SCALE: 1" =1500'




**FIGURE 1**
**VICINITY MAP**

WEST CONTRA COSTA SANITARY LANDFILL, INC.
GOLDEN BEAR TRANSFER SERVICES, INC.
1 PARR BOULEVARD
RICHMOND, CA 94801

| PROJECT NO.: 100427 | |
|---|---|
| DATE: | 06/24/15 |
| DRAWN BY: | HMG |
| CHECKED BY: | MP |
| APPRVD. BY: | NSC |



LEGEND

- - - FACILITY BOUNDARY

POTENTIAL POLLUTANT CONTACT AREA

→ DIRECTION OF FLOW

EMERGENCY SPILL KIT LOCATION

MONITORING POINT

DISCHARGE POINT

DRAINAGE AREAS

SITE INFORMATION:

| 351± | ACRES |
|------|-------|
| 5% | IMPERVIOUS |
| 95% | PERVIOUS |

SOUTHERN PORTION OF PROPERTY CONSISTS OF A LAGOON.
TOPOGRAPHY AND PERIMETER STRUCTURAL CONTROL MEASURES
PREVENT STORMWATER RUNOFF EXCEPT WHERE INDICATED.
RECEIVING WATER: SAN PABLO BAY

NOTE:

ALL SURFACES LANDSCAPE (PERVIOUS)
EXCEPT WHERE INDICATED.

**environmental services**
ES ENGINEERING, INC.
1036 W. Taft Avenue • Orange, CA 92865 • (714) 919-6500

0   500   1000
APPROX. SCALE: 1" = 500'

**FIGURE 2 - AERIAL MAP**
WEST CONTRA COSTA SANITARY LANDFILL, INC.
GOLDEN BEAR TRANSFER SERVICES, INC.
1 PARR BOULEVARD
RICHMOND, CA 94801

| PROJECT NO.: | 100427 |
|---|---|
| DATE: | 06/24/15 |
| DRAWN: HMG | CHECKED: MP | APPRVD: NSC |



## LEGEND

— · · — FACILITY BOUNDARY

POTENTIAL POLLUTANT CONTACT AREA

→ DIRECTION OF FLOW

⑤ EMERGENCY SPILL KIT LOCATION

☐ MONITORING POINT

△ DISCHARGE POINT

◇ DRAINAGE AREAS

## SITE INFORMATION:

351±    ACRES
5%      IMPERVIOUS
95%     PERVIOUS
SOUTHERN PORTION OF PROPERTY CONSISTS OF A LAGOON.
TOPOGRAPHY AND PERIMETER STRUCTURAL CONTROL MEASURES
PREVENT STORMWATER RUNOFF EXCEPT WHERE INDICATED.
RECEIVING WATER: SAN PABLO BAY

## NOTE:

ALL SURFACES LANDSCAPE (PERVIOUS)
EXCEPT WHERE INDICATED.

**environmental services**
ES ENGINEERING, INC.
1036 W. Taft Avenue · Orange, CA 92865 · (714) 919-6500

0    500    1000
APPROX. SCALE: 1" =500'

**FIGURE 3 - SITE MAP**
WEST CONTRA COSTA SANITARY LANDFILL, INC.
GOLDEN BEAR TRANSFER SERVICES, INC.
1 PARR BOULEVARD
RICHMOND, CA 94801

PROJECT NO.:    100427
DATE:    06/24/15
DRAWN:  HMG   CHECKED:  MP   APPRVD:  NSC

Map labels: SAN PABLO BAY, MP-1, MP-2, MP-3, MP-5, MP-4, MP-6, MP-7, MP-8, MP-9, MP-10, MP-11, MP-12, MP-13, CLOSED CLASS I WASTE DISPOSAL AREA, FORMER CLASS II WASTE DISPOSAL AREA, COMPOSTING AREA, C&D, WOOD CHIP, EMPLOYEE PARKING, GOLDEN BEAR TS, HAZARDOUS WASTE STORAGE, AREA "A" RETENTION POND, SAN PABLO BAY, AREA B LAGOON, AREA B LAGOON, SEE FIGURE 4



**LEGEND**

— — —  FACILITY BOUNDARY

▭  POTENTIAL POLLUTANT CONTACT AREA

⬅  DIRECTION OF FLOW

⬡  EMERGENCY SPILL KIT LOCATION

▣  MONITORING POINT

S/R  SHIPPING / RECEIVING AREA

◆ 3  DRAINAGE AREAS

**MATERIALS STORAGE AREAS:**

ABOVE GROUND

1  LEACHATE HOLDING AND TREATMENT TANKS

2  CONCRETE CONTAINMENT AREA WITH: OIL, USED OIL & HYDRAULIC OIL IN AST'S

3  HOUSEHOLD HAZARDOUS WASTE

4  APPLIANCE DROP-OFF

MP-9

ACCESS ROAD TYP. (GRAVEL/DIRT SURFACE)

CAMU

ACCESS ROAD TYP. (GRAVEL/DIRT SURFACE)

OFFICE

EMPLOYEE PARKING

MP-10

HMWF LEACHATE TREATMENT FACILITIES

S/R

GOLDEN BEAR TRANSFER STATION

EQUIPMENT STORAGE

LANDFILL GAS FLARE

LANDFILL GAS POWER PLANT

BIN STORAGE

BIN STORAGE

AREA "A" RETENTION POND

ENGINE MAINTENANCE BLDG.

S/R  MP-11

**SITE INFORMATION:**
351±     ACRES
5%       IMPERVIOUS
95%      PERVIOUS
SOUTHERN PORTION OF PROPERTY CONSISTS OF A LAGOON.
TOPOGRAPHY AND PERIMETER STRUCTURAL CONTROL MEASURES
PREVENT STORMWATER RUNOFF EXCEPT WHERE INDICATED.
RECEIVING WATER: SAN PABLO BAY

**NOTE:**

ALL SURFACES LANDSCAPE (PERVIOUS) EXCEPT WHERE INDICATED.

**environmental services**
ES ENGINEERING, INC.
1036 W. Taft Avenue • Orange, CA 92865 • (714) 919-6500

0    120    180    240
APPROX. SCALE: 1" =120'

**FIGURE 4 - TRANSFER STATION**
WEST CONTRA COSTA SANITARY LANDFILL, INC.
GOLDEN BEAR TRANSFER SERVICES, INC.
1 PARR BOULEVARD
RICHMOND, CA 94801

PROJECT NO.:  100427

DATE:  06/24/15

DRAWN: HMG  CHECKED: TH  APPRVD: NSC

1        **EXHIBIT B – CWA Notice of Violation and Intent to Sue Letter**

Law Offices Of

ANDREW L. PACKARD

245 Kentucky Street, Suite B3, Petaluma, CA 94952
Phone (707) 782-4060   Fax (707) 782-4062
Info@PackardLawOffices.com

August 24, 2020

**VIA CERTIFIED MAIL**

| | |
|---|---|
| Rob Sherman, General Manager | Ed Baquerizo, Environmental Manager |
| West Contra Costa Sanitary Landfill, Inc. | West Contra Costa Sanitary Landfill, Inc. |
| PO Box 4100 | PO Box 4100 |
| Richmond, CA 94804 | Richmond, CA 94804 |
| | |
| CT Corporation System, Agent for Service | Robert B. Boyer, Chief Executive Officer |
| of Process for West Contra Costa Sanitary | West Contra Costa Sanitary Landfill, Inc. |
| Landfill, Inc. | 18500 North Allied Way |
| 818 West Seventh Street, Suite 930 | Phoenix, AZ 85054 |
| Los Angeles, CA 90017 | |

Re:     **NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE
        FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT")
        (33 U.S.C. §§ 1251 *et seq.*)**

Dear Rob Sherman, Ed Baquerizo, and Robert Boyer:

This firm represents California Sportfishing Protection Alliance ("CSPA") in regard to violations of the Clean Water Act ("the Act") occurring at West Contra Costa Sanitary Landfill located at Foot of Parr Boulevard, in Richmond, California (the "Facility"). This letter is being sent to you as the responsible owners, officers and/or operators of the Facility, or as the registered agent for this entity. Unless otherwise noted, West Contra Costa Sanitary Landfill, Inc., Rob Sherman, Ed Baquerizo, and Robert Boyer shall hereinafter be collectively referred to as "WCCSL."

WCCSL is in ongoing violation of the substantive and procedural requirements of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, and National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 State Water Resources Control Board Water Quality Order No. 14-57-DWQ ("General Permit" or "Permit").[1] The purpose of this letter is to provide WCCSL with notice of the violations of the General Permit occurring at the Facility, including, but not limited to, discharges of polluted storm water associated with industrial activities from the Facility into local surface waters.

---

[1] WCCSL submitted a Notice of Intent ("NOI") to comply with the General Permit for the Facility on or about January 24, 2019. The Facility's Waste Discharge Identification number is 207I005532.

Notice of Violation and Intent To File Suit
August 24, 2020
Page 2

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Act subjects WCCSL to a penalty for all violations occurring during the period commencing five years prior to the date of the Notice Letter. These provisions of law authorize civil penalties of up to $37,500 per day per violation for all Clean Water Act violations occurring after January 12, 2009, and $55,800 per day per violation for all violations that occurred after November 2, 2015. In addition to civil penalties, CSPA will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law. Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The Clean Water Act requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur. *See* 40 C.F.R. § 135.2. As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility. 40 C.F.R. § 135.3(a). At the expiration of sixty (60) days from the date of this letter, CSPA intends to file suit under Section 505(a) of the Act in federal court against WCCSL for violations of the Clean Water Act and the Permit.

## I.      Background

### A.      California Sportfishing Protection Alliance

CSPA is a non-profit corporation dedicated to the preservation, protection and defense of the environment, wildlife and natural resources of California waters, including the waters into which WCCSL discharges polluted storm water. Members of CSPA enjoy the waters that the Facility discharges into, including San Pablo Bay. Members of CSPA use and enjoy these waters for their fishing, estuarine habitat and the rare, threatened and endangered species it supports, the wildlife habitat, marine habitat, and other designated beneficial uses. The discharge of pollutants from the Facility impairs each of these uses. Discharges of polluted storm water from the Facility are ongoing and continuous. Thus, the interests of CSPA's members have been, are being, and will continue to be adversely affected by WCCSL' failure to comply with the Clean Water Act and the General Permit.

### B.      The Clean Water Act

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The Act prohibits the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; *San Francisco Baykeeper, Inc. v. Tosco Corp*., 309 F.3d 1153, 1156 (9th Cir. 2002). The Act is administered largely through the NPDES permit program. 33 U.S.C. § 1342. In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system. Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832,

Notice of Violation and Intent To File Suit
August 24, 2020
Page 3

840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme). The discharge of pollutants without an NPDES permit, or in violation of a permit, is illegal. *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states. *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program). The CWA authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b). Pursuant to Section 402 of the Act, the Administrator of EPA has authorized California's State Board to issue individual and general NPDES permits in California. 33 U.S.C. § 1342.

### C.    California's General Permit for Storm Water Discharges Associated with Industrial Activities

Facilities discharging, or having the potential to discharge, storm water associated with industrial activities that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a Notice of Intent to Comply ("NOI"). General Permit, Standard Condition XXI.A. Facilities must file their NOIs before the initiation of industrial operations. *Id.* Facilities must strictly comply with all of the terms and conditions of the General Permit; a violation of the General Permit is a violation of the CWA.

The General Permit contains three primary and interrelated categories of requirements: (1) discharge prohibitions, effluent limitations, and receiving water limitations; (2) Storm Water Pollution Prevention Plan ("SWPPP") requirements; and (3) self-monitoring and reporting requirements.

### D.    WCCSL's Facility

Information available to CSPA indicates that WCCSL's industrial activities at the approximately 340-acre Facility include, but are not limited to: maintenance of a closed and capped Class I Landfill; operation of a Hazardous Waste Management Facility; maintenance of a Corrective Action Management Unit; operation of a Leachate Treatment Plant; maintenance of a Closed Class II Municipal Solid Waste Landfill; operation of a waste transfer station; operation of a composting facility; disposal of construction and demolition debris; and maintenance of equipment associated with all of the above industrial activities (collectively "Industrial Activities"). The Industrial Activities at the Facility fall under Standard Industrial Classification ("SIC") Codes 4953 ("Refuse Systems"); 5093 ("Scrap and Waste Materials (not including source separated recycling)"); and, 2875 ("Fertilizers, Pesticides, etc.").

WCCSL collects and discharges storm water associated with its Industrial Activities at the Facility through at least nine discharge points into San Pablo Bay, San Pablo Creek, and a

Notice of Violation and Intent To File Suit
August 24, 2020
Page 4

large lagoon south of the Facility ("Pond B").  San Pablo Bay, San Pablo Creek, and Pond B are waters of the United States within the meaning of the Clean Water Act.  40 C.F.R. § 120.2(3).

The areas of Industrial Activity at the Facility are sources of pollutants, as are wastes placed on slopes outside of permitted areas on the closed Class II portion of the landfill property. The General Permit requires WCCSL to analyze storm water samples for TSS, pH, and Oil and Grease.  General Permit, Section XI.B.6.  Facilities under SIC Code 4953 must also analyze storm water samples for iron ("Fe"), lead ("Pb"), aluminum ("Al"), zinc ("Zn"), chemical oxygen demand ("COD"), nitrate plus nitrite nitrogen ("N+N"), and phosphorus ("P").  General Permit, Tables 1-2.

## II.    WCCSL's Violations of the Act and Permit

Based on its review of available public documents, CSPA is informed and believes that WCCSL is in ongoing violation of both the substantive and procedural requirements of the CWA and the General Permit.  These violations are ongoing and continuous.  Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, WCCSL is subject to penalties for violations of the Act since August 21, 2015.

### A.    WCCSL Discharges Storm Water Containing Pollutants in Violation of the General Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations

WCCSL's storm water sampling results provide conclusive evidence of WCCSL's failure to comply with the General Permit's discharge prohibitions, effluent limitations, and receiving water limitations.  Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation."  *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

#### 1.    Discharge Prohibitions

The General Permit prohibits all discharges of storm water to waters of the United States except as specifically authorized by the General Permit or another NPDES permit.  General Permit, Section III.A.  The General Permit further prohibits, with a few authorized exceptions, the discharge of liquids or materials other than storm water to waters of the United States unless authorized by another NPDES permit.  General Permit, Section III.B.

The General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance.  General Permit, Discharge Prohibition III.C.  The General Permit also prohibits discharges that violate any discharge prohibition contained in the applicable Regional Water Board's Basin Plan or statewide water quality control plans and policies.  General Permit, Discharge Prohibition III.D.

Notice of Violation and Intent To File Suit
August 24, 2020
Page 5

### 2.    Effluent Limitations

Dischargers are required to reduce or prevent pollutants in their storm water discharges through implementation of best available technology economically achievable ("BAT") for toxic and nonconventional pollutants and best conventional pollutant control technology ("BCT") for conventional pollutants.  General Permit, Effluent Limitation V.A.  Conventional pollutants include Total Suspended Solids, Oil & Grease, pH, Biochemical Oxygen Demand and Fecal Coliform.  40 C.F.R. § 401.16.  All other pollutants are either toxic or nonconventional.  40 C.F.R. §§ 401.15-16.

Under the General Permit, benchmark levels established by the EPA ("EPA benchmarks") serve as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT.  *Santa Monica Baykeeper v. Kramer Metals,* 619 F. Supp. 2d 914, 920, 923 (C.D. Cal 2009); General Permit, Section XII.A.  The following EPA benchmarks have been established for pollutants discharged by WCCSL: total suspended solids – 100 mg/L; oil & grease – 15.0 mg/L; iron – 1.0 mg/L; aluminum – 0.75 mg/L; zinc – 0.26 mg/L; chemical oxygen demand – 120 mg/L; nitrate plus nitrite nitrogen – 0.68 mg/L; phosphorus – 2.0 mg/L; and, pH – 6.0-9.0 s.u.

The General Permit also incorporates Effluent Limitation Guidelines ("ELG") for industrial storm water discharges from facilities in specific industrial categories.  General Permit, Section I.K.  WCCSL's Facility is a landfill and therefore subject to the storm water ELGs identified in Attachment F of the General Permit.  General Permit, Section V.B.  40 C.F.R. § 445.2(b) defines "contaminated storm water" as "storm water which comes in direct contact with landfill wastes, the waste handling and treatment areas, or landfill wastewater as defined in paragraph (f) of this section."  "Contaminated storm water" is included in the definition of "landfill wastewater."  40 C.F.R. § 445.2(f).  Landfills that discharge "contaminated storm water" must achieve the following effluent limitations which represent the application of best practicable control technology currently available and the best conventional pollutant control technology:

### EFFLUENT LIMITATIONS

| Regulated parameter | Maximum daily [1] | Maximum monthly avg. [1] |
|---|---|---|
| BOD .......................................... | 140 | 37 |
| TSS ........................................... | 88 | 27 |
| Ammonia (as N) ...................... | 10 | 4.9 |
| α-Terpineol ............................. | 0.033 | 0.016 |
| Benzoic acid ........................... | 0.12 | 0.071 |
| p-Cresol ................................... | 0.025 | 0.014 |
| Phenol ...................................... | 0.026 | 0.015 |
| Zinc .......................................... | 0.20 | 0.11 |
| pH ............................................. | [2] | [2] |

[1] Milligrams per liter (mg/L, ppm)
[2] Within the range 6 to 9.

Notice of Violation and Intent To File Suit
August 24, 2020
Page 6

40 C.F.R. §§ 445.21-23.

Information available to CSPA indicates that WCCSL has discharged, and continues to discharge, "contaminated storm water" – and thus "landfill wastewater" – from the Facility on each day storm water discharges from the Facility, since at least 2011. WCCSL, between 2011 and the present, has placed waste materials on the exterior portions of the closed landfill cells at the Facility. These materials include waste from the Facility's composting operation on the closed Class II landfill, and potentially other contaminants or pollutants not documented or assessed. Publicly-available satellite imagery shows that WCCSL placed this waste material throughout the Facility, beyond permitted operational waste boundaries. *See* **Attachment A**. The waste materials were often placed in windrows or piles, which were then spread across the ground, covering a large percentage of the Facility's surface. *Id.* Storm water that falls on the Facility becomes contaminated by the waste material (thus becoming "contaminated storm water" as defined by 40 C.F.R. § 445.2(b)) and commingles with the Facility's storm water which discharges directly to San Pablo Bay in the northern portion of the Facility, to San Pablo Creek in the eastern portion of the Facility and to the unlined Pond B in the southern portion of the Facility.

WCCSL's discharges of "contaminated storm water" must not exceed the storm water ELGs identified at 40 C.F.R. §§ 445.21-23. General Permit, Section V.B. The following discharges of "contaminated storm water" from the Facility have violated the ELGs imposed by Section V.B of the General Permit:

| Date | Sample Name | Parameter | Sample Result | ELG |
|------|-------------|-----------|---------------|-----|
| 1/17/2020 | WCL-08 | TSS | 2600 mg/L | 88 mg/L* |
| 1/17/2020 | WCL-08 | Zn | 0.7 mg/L | 0.2 mg/L* |
| January 2020 | | TSS | 338 mg/L | 27 mg/L** |
| 12/18/2019 | WCL-08 | TSS | 290 mg/L | 88 mg/L* |
| December 2019 | | TSS | 55 mg/L | 27 mg/L** |
| 3/20/2019 | WCL-08 | TSS | 210 mg/L | 88 mg/L* |
| 3/20/2019 | WCL-08 | pH | 9.4 s.u. | 6 – 9 s.u.* |
| 3/20/2019 | WCL-11-E | pH | 9.5 s.u. | 6 – 9 s.u.* |
| March 2019 | | TSS | 116 mg/L | 27 mg/L** |
| March 2019 | | pH | 9.45 s.u. | 6 – 9 s.u.** |
| 2/26/2019 | WCL-11-E | TSS | 300 mg/L | 88 mg/L* |
| 2/26/2019 | WCL-11-E | pH | 9.5 s.u. | 6 – 9 s.u.* |
| 2/13/2019 | WCL-08 | TSS | 640 mg/L | 88 mg/L* |
| 2/13/2019 | WCL-08 | pH | 9.1 s.u. | 6 – 9 s.u.* |
| 2/13/2019 | WCL-11-E | pH | 9.4 s.u. | 6 – 9 s.u.* |
| 2/5/2019 | WCL-08 | pH | 9.4 s.u. | 6 – 9 s.u.* |
| 2/5/2019 | WCL-11-E | pH | 9.1 s.u. | 6 – 9 s.u.* |
| February 2019 | | TSS | 176 mg/L | 27 mg/L** |
| February 2019 | | pH | 9.23 s.u. | 6 – 9 s.u.** |
| 11/29/2018 | WCL-08 | TSS | 510 mg/L | 88 mg/L* |

Notice of Violation and Intent To File Suit
August 24, 2020
Page 7

| 11/29/2018 | WCL-08 | Zn | 0.23 mg/L | 0.2 mg/L* |
|---|---|---|---|---|
| November 2018 | | TSS | 258 mg/L | 27 mg/L** |
| November 2018 | | Zn | 0.12 mg/L | 0.11 mg/L** |
| 1/22/2018 | WCL-08 | pH | 9.3 s.u. | 6 – 9 s.u.* |
| 1/8/2018 | WCL-08 | pH | 9.6 s.u. | 6 – 9 s.u.* |
| 1/8/2018 | WCL-08 | TSS | 1200 mg/L | 88 mg/L* |
| 1/8/2018 | WCL-08 | Zn | 0.38 mg/L | 0.2 mg/L* |
| January 2018 | | TSS | 322 mg/L | 27 mg/L** |
| January 2018 | | Zn | 0.12 mg/L | 0.11 mg/L** |
| 2/20/2017 | WCL-11-C | pH | 9.4 s.u. | 6 – 9 s.u. |
| 2/20/2017 | WCL-11-D | pH | 9.1 s.u. | 6 – 9 s.u.* |
| February 2017 | | pH | 9.25 s.u. | 6 – 9 s.u.** |
| 12/8/2016 | WCL-08 | TSS | 160 mg/L | 88 mg/L* |
| December 2016 | | TSS | 160 mg/L | 27 mg/L** |
| 3/7/2016 | WCL-08 | TSS | 302 mg/L | 88 mg/L* |
| March 2016 | | TSS | 302 mg/L | 27 mg/L** |
| 1/6/2016 | WCL-11-E | TSS | 1200 mg/L | 88 mg/L* |
| 1/6/2016 | WCL-08 | TSS | 200 mg/L | 88 mg/L* |
| 1/6/2016 | WCL-11-E | Zn | 0.22 mg/L | 0.2 mg/L* |
| January 2016 | | TSS | 487 mg/L | 27 mg/L** |
| 12/13/2015 | WCL-08 | pH | 9.3 s.u. | 6 – 9 s.u.* |
| 12/13/2015 | WCL-08 | TSS | 420 mg/L | 88 mg/L* |
| 12/13/2015 | WCL-11-D | TSS | 150 mg/L | 88 mg/L* |
| December 2015 | | TSS | 197 mg/L | 27 mg/L** |

*maximum daily effluent limitation
**maximum monthly average effluent limitation

On February 5 and 15, 2019, Regional Water Quality Control Board staff inspected the Facility and observed violations of the General Permit, and the Facility's Waste Discharge Requirement Order No. R2-2002-0066. The Regional Board staff received a report from a Contra Costa County Department of Environmental Health inspector who observed the Facility pumping "contaminated storm water" from the lined leachate pond ("Lined Pond") to the unlined stormwater pond in Area A ("Pond A"). The Regional Board reported that Facility staff stated that "contaminated storm water" from the compost operation and runoff was released into the Pond A. Regional Board staff observed Pond A overflowing into the unlined Pond B (a water of the United States).

Information available to CSPA indicates that the Lined Pond is undersized for its purpose of capturing the "contaminated storm water" generated at the compost operation, and any other runoff that drains to the Lined Pond. CSPA is informed and believes that during periods of significant rainfall the Lined Pond is likely to overflow into the unlined Pond A and the unlined Pond B. Each day the Facility has discharged, or discharges, storm water from the Lined Pond is a violation of Section III.A of the General Permit because discharges of the "contaminated storm

Notice of Violation and Intent To File Suit
August 24, 2020
Page 8

water" collected in the Lined Pond are not authorized under the General Permit.  WCCSL has
also violated, and continues to violate, Section V of the General Permit by failing to adequately
monitor any discharges from the Lined Pond, or any waters that have commingled with
"contaminated storm water" from the Lined Pond because those discharges are subject to the
storm water ELGs at 40 C.F.R. §§ 445.21-23.

### 3.    Receiving Water Limitations

Storm water discharges and authorized non-storm water discharges shall not adversely
impact human health or the environment, and shall not cause or contribute to a violation of any
water quality standards in any affected receiving water.  General Permit, Sections VI.A, VI.B.
Industrial storm water discharges shall not contain pollutants in quantities that threaten to cause
pollution or a public nuisance.  General Permit, Section VI.C.

Dischargers are required to prepare and submit documentation to the Regional Board
upon determination that storm water discharges are in violation of the General Permit's
Receiving Water Limitations.  General Permit, Section XX.B.  The documentation must describe
changes the discharger will make to its current storm water Best Management Practices
("BMPs") in order to prevent or reduce the presence of any pollutants in its storm water
discharges that are causing or contributing to an exceedance of water quality standards.  *Id.*

The *San Francisco Bay Basin (Region 2) Water Quality Control Plan (Basin Plan)*,
amended May 4, 2017, ("Basin Plan") also sets forth water quality standards and prohibitions
applicable to WCCSL's storm water discharges.  The Basin Plan prohibits the discharge of
"[r]ubbish, refuse, bark, sawdust, or other solid wastes into surface waters or at any place where
they would contact or where they would be eventually transported to surface waters, including
flood plain areas."  Basin Plan, Table 4-1.  The following narrative standards also apply:
"[w]aters shall not contain floating material, including solids, liquids, foams, and scum, in
concentrations that cause nuisance or adversely affect beneficial uses;" "[w]aters shall not
contain substances in concentrations that result in the deposition of material that cause nuisance
or adversely affect beneficial uses."  Basin Plan, Section 3.3.6 and 3.3.13.  The Basin Plan
identifies present and potential beneficial uses for the San Pablo Bay, which include industrial
service water supply, commercial and sportfishing, shellfish harvesting, estuarine habitat, fish
migration, preservation of rare and endangered species, fish spawning, wildlife habitat, contact
and noncontact water recreation, and navigation.  The 2014/2016 California Integrated Report
(Clean Water Act Section 303(d) List/305(b) Report) lists the following impairments for San
Pablo Bay: chlordane, dichlorodiphenyltrichloroethane, dieldrin, dioxin compounds (including 2,
3, 7, 8-TCDD), furan compounds, invasive species, mercury, polychlorinated biphenyls, and
selenium.  San Pablo Creek is impaired for diazinon and trash.

### 4.    WCCSL's Storm Water Sample Results

The following discharges of pollutants from the Facility have violated the discharge
prohibitions, effluent limitations, and receiving water limitations of the Permit:

Notice of Violation and Intent To File Suit
August 24, 2020
Page 9

      **a.**      **Discharge of Storm Water Containing Total Suspended Solids (TSS) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 1/17/2020 | WCL-08 | TSS | 2600 | 100 |
| 12/18/2019 | WCL-08 | TSS | 290 | 100 |
| 3/20/2019 | WCL-08 | TSS | 210 | 100 |
| 2/26/2019 | WCL-11-E | TSS | 300 | 100 |
| 2/13/2019 | WCL-08 | TSS | 640 | 100 |
| 11/29/2018 | WCL-8 | TSS | 510 | 100 |
| 1/8/2018 | WCL-08 | TSS | 1200 | 100 |
| 12/8/2016 | WCL-8 | TSS | 160 | 100 |
| 3/7/2016 | WCL-8 | TSS | 302 | 100 |
| 1/6/2016 | WCL-11E | TSS | 1200 | 100 |
| 1/6/2016 | WCL-8 | TSS | 200 | 100 |
| 12/13/2015 | WCL-8 | TSS | 420 | 100 |
| 12/13/2015 | WCL 11 D | TSS | 150 | 100 |

      **b.**      **Discharge of Storm Water Containing Zinc (Zn) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 1/17/2020 | WCL-08 | Zn | 0.7 | 0.26 |
| 1/8/2018 | WCL-08 | Zn | 0.38 | 0.26 |

      **c.**      **Discharge of Storm Water Containing Iron (Fe) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 1/17/2020 | WCL-08 | Fe | 96 | 1.0 |
| 12/18/2019 | WCL-08 | Fe | 13 | 1.0 |
| 3/20/2019 | WCL-08 | Fe | 9.5 | 1.0 |
| 2/26/2019 | WCL-11-E | Fe | 13 | 1.0 |
| 2/13/2019 | WCL-08 | Fe | 29 | 1.0 |
| 2/13/2019 | WCL-11-E | Fe | 1.7 | 1.0 |
| 11/29/2018 | WCL-8 | Fe | 27 | 1.0 |
| 1/22/2018 | WCL-08 | Fe | 5.3 | 1.0 |
| 1/8/2018 | WCL-08 | Fe | 55 | 1.0 |

Notice of Violation and Intent To File Suit
August 24, 2020
Page 10

| 2/20/2017 | Composite of WCL-11-B, C, and D | Fe | 1.3 | 1.0 |
|---|---|---|---|---|
| 12/8/2016 | WCL-8 | Fe | 11 | 1.0 |
| 1/15/2016 | WCL-08 | Fe | 3.3 | 1.0 |
| 1/15/2016 | WCL 11-E | Fe | 170 | 1.0 |
| 1/6/2016 | WCL-11E | Fe | 40 | 1.0 |
| 1/6/2016 | WCL-8 | Fe | 11 | 1.0 |
| 1/6/2016 | WCL-11C | Fe | 2.5 | 1.0 |
| 12/13/2015 | WCL-8 | Fe | 26 | 1.0 |
| 12/13/2015 | WCL 11 D | Fe | 9.2 | 1.0 |
| 12/11/2015 | WCL-8 | Fe | 2 | 1.0 |

      **d.**      **Discharge of Storm Water Containing Aluminum (Al) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 1/17/2020 | WCL-08 | Al | 65 | 0.75 |
| 12/18/2019 | WCL-08 | Al | 8.9 | 0.75 |
| 3/20/2019 | WCL-08 | Al | 6.5 | 0.75 |
| 2/26/2019 | WCL-11-E | Al | 9 | 0.75 |
| 2/13/2019 | WCL-08 | Al | 21 | 0.75 |
| 2/13/2019 | WCL-11-E | Al | 1.4 | 0.75 |
| 2/5/2019 | WCL-08 | Al | 0.97 | 0.75 |
| 11/29/2018 | WCL-8 | Al | 17 | 0.75 |
| 1/22/2018 | WCL-08 | Al | 3.7 | 0.75 |
| 1/8/2018 | WCL-08 | Al | 38 | 0.75 |
| 12/8/2016 | WCL-8 | Al | 8.8 | 0.75 |
| 10/27/2016 | WCL-8 | Al | 2.4 | 0.75 |
| 10/27/2016 | WCL-8 | Al | 2.4 | 0.75 |
| 1/15/2016 | WCL-08 | Al | 2.5 | 0.75 |
| 1/15/2016 | WCL 11-E | Al | 53 | 0.75 |
| 1/6/2016 | WCL-8 | Al | 8 | 0.75 |
| 12/13/2015 | WCL-8 | Al | 21 | 0.75 |
| 12/13/2015 | WCL 11 D | Al | 9.4 | 0.75 |
| 12/11/2015 | WCL-8 | Al | 1.8 | 0.75 |

      **e.**      **Discharge of Storm Water Containing Chemical Oxygen Demand (COD) at Concentrations in Excess of Applicable EPA Benchmark Value**

Notice of Violation and Intent To File Suit
August 24, 2020
Page 11

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 1/17/2020 | WCL-08 | COD | 1100 | 120 |
| 1/17/2020 | WCL-11-C | COD | 250 | 120 |
| 1/17/2020 | WCL-11-E | COD | 220 | 120 |
| 1/17/2020 | WCL-11-D | COD | 180 | 120 |
| 1/17/2020 | WCL-11-J | COD | 230 | 120 |
| 1/17/2020 | WCL-11-F | COD | 160 | 120 |
| 1/17/2020 | WCL-11-G | COD | 280 | 120 |
| 12/18/2019 | WCL-08 | COD | 210 | 120 |
| 12/18/2019 | WCL-11-C | COD | 220 | 120 |
| 12/18/2019 | WCL-11-J | COD | 250 | 120 |
| 12/18/2019 | WCL-11-E | COD | 250 | 120 |
| 12/18/2019 | WCL-11-G | COD | 200 | 120 |
| 12/18/2019 | WCL-11-D | COD | 210 | 120 |
| 3/20/2019 | WCL-08 | COD | 240 | 120 |
| 3/20/2019 | WCL-11-E | COD | 330 | 120 |
| 2/26/2019 | WCL-11-E | COD | 250 | 120 |
| 2/26/2019 | WCL-08 | COD | 210 | 120 |
| 2/13/2019 | WCL-08 | COD | 280 | 120 |
| 2/13/2019 | WCL-11-E | COD | 240 | 120 |
| 2/5/2019 | WCL-11-E | COD | 320 | 120 |
| 11/29/2018 | WCL-8 | COD | 290 | 120 |
| 11/29/2018 | WCL-11E | COD | 190 | 120 |
| 1/22/2018 | Composite of WCL-11-D & WCL 11-E | COD | 190 | 120 |
| 1/8/2018 | WCL-08 | COD | 410 | 120 |
| 1/8/2018 | Composite of WCL-11-D & WCL 11-E | COD | 130 | 120 |
| 4/17/2017 | Composite of WCL-11-A, C, D, and E | COD | 190 | 120 |
| 2/20/2017 | Composite of WCL-11-B, C, and D | COD | 280 | 120 |
| 12/8/2016 | WCL-8 | COD | 130 | 120 |
| 10/27/2016 | WCL-8 | COD | 200 | 120 |
| 10/27/2016 | WCL-8 | COD | 200 | 120 |
| 1/15/2016 | WCL 11-E | COD | 250 | 120 |
| 12/13/2015 | WCL 11 D | COD | 950 | 120 |

   **f.**  **Discharge of Storm Water Containing Nitrate Plus Nitrite Nitrogen (N+N) at Concentrations in Excess of Applicable EPA Benchmark Value**

Notice of Violation and Intent To File Suit
August 24, 2020
Page 12

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 1/17/2020 | WCL-08 | N+N | 0.87 | 0.68 |
| 1/17/2020 | WCL-11-C | N+N | 87 | 0.68 |
| 1/17/2020 | WCL-11-E | N+N | 76 | 0.68 |
| 1/17/2020 | WCL-11-D | N+N | 46 | 0.68 |
| 1/17/2020 | WCL-11-J | N+N | 65 | 0.68 |
| 1/17/2020 | WCL-11-F | N+N | 37 | 0.68 |
| 1/17/2020 | WCL-11-G | N+N | 49 | 0.68 |
| 1/17/2020 | WCL-11-A | N+N | 1.7 | 0.68 |
| 12/18/2019 | WCL-08 | N+N | 4.4 | 0.68 |
| 12/18/2019 | WCL-11-C | N+N | 54 | 0.68 |
| 12/18/2019 | WCL-11-J | N+N | 83 | 0.68 |
| 12/18/2019 | WCL-11-E | N+N | 72 | 0.68 |
| 12/18/2019 | WCL-11-G | N+N | 77 | 0.68 |
| 12/18/2019 | WCL-11-D | N+N | 70 | 0.68 |
| 3/20/2019 | WCL-08 | N+N | 0.91 | 0.68 |
| 3/20/2019 | WCL-11-E | N+N | 71 | 0.68 |
| 2/26/2019 | WCL-11-E | N+N | 3.2 | 0.68 |
| 2/26/2019 | WCL-08 | N+N | 93 | 0.68 |
| 2/13/2019 | WCL-08 | N+N | 4.6 | 0.68 |
| 2/13/2019 | WCL-11-E | N+N | 110 | 0.68 |
| 2/5/2019 | WCL-08 | N+N | 12 | 0.68 |
| 2/5/2019 | WCL-11-E | N+N | 340 | 0.68 |
| 11/29/2018 | WCL-8 | N+N | 1.1 | 0.68 |
| 11/29/2018 | WCL-11E | N+N | 27 | 0.68 |
| 1/22/2018 | Composite of WCL-11-D & WCL 11-E | N+N | 12 | 0.68 |
| 1/8/2018 | WCL-08 | N+N | 1.7 | 0.68 |
| 1/8/2018 | Composite of WCL-11-D & WCL 11-E | N+N | 6.5 | 0.68 |
| 2/20/2017 | Composite of WCL-11-B, C, and D | N+N | 1.6 | 0.68 |
| 12/8/2016 | WCL-8 | N+N | 2.2 | 0.68 |
| 10/27/2016 | WCL-8 | N+N | 2.9 | 0.68 |
| 10/27/2016 | WCL-8 | N+N | 2.9 | 0.68 |
| 3/7/2016 | WCL-8 | N+N | 7.5 | 0.68 |
| 1/15/2016 | WCL-08 | N+N | 12 | 0.68 |
| 1/15/2016 | WCL 11-E | N+N | 260 | 0.68 |
| 1/6/2016 | WCL-11E | N+N | 0.94 | 0.68 |
| 1/6/2016 | WCL-11C | N+N | 94 | 0.68 |

Notice of Violation and Intent To File Suit
August 24, 2020
Page 13

### g. Discharge of Storm Water Containing Phosphorus (P) at Concentrations in Excess of Applicable EPA Benchmark Value

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 1/17/2020 | WCL-08 | P | 2.9 | 2.0 |
| 1/17/2020 | WCL-11-C | P | 2.4 | 2.0 |
| 1/17/2020 | WCL-11-J | P | 2.2 | 2.0 |
| 1/8/2018 | Composite of WCL-11-D & WCL 11-E | P | 2.1 | 2.0 |
| 2/20/2017 | Composite of WCL-11-B, C, and D | P | 2.4 | 2.0 |
| 10/27/2016 | WCL-8 | P | 2.1 | 2.0 |
| 10/27/2016 | WCL-8 | P | 2.1 | 2.0 |
| 3/7/2016 | WCL-8 | P | 8.6 | 2.0 |
| 1/6/2016 | WCL-11E | P | 3.3 | 2.0 |
| 1/6/2016 | WCL-11C | P | 2.3 | 2.0 |
| 12/13/2015 | WCL-8 | P | 180 | 2.0 |

### h. Discharge of Storm Water Containing pH at Levels Outside the EPA Threshold

| Date | Discharge Point | Parameter | Measured pH (s.u.) | EPA Benchmark Threshold (s.u.) |
|---|---|---|---|---|
| 3/20/2019 | WCL-08 | pH | 9.4 | 6.0 – 9.0 |
| 3/20/2019 | WCL-11-E | pH | 9.5 | 6.0 – 9.0 |
| 2/26/2019 | WCL-11-E | pH | 9.5 | 6.0 – 9.0 |
| 2/13/2019 | WCL-08 | pH | 9.1 | 6.0 – 9.0 |
| 2/13/2019 | WCL-11-E | pH | 9.4 | 6.0 – 9.0 |
| 2/5/2019 | WCL-08 | pH | 9.4 | 6.0 – 9.0 |
| 2/5/2019 | WCL-11-E | pH | 9.1 | 6.0 – 9.0 |
| 1/22/2018 | WCL-08 | pH | 9.3 | 6.0 – 9.0 |
| 1/8/2018 | WCL-08 | pH | 9.6 | 6.0 – 9.0 |
| 2/20/2017 | WCL-11-C | pH | 9.4 | 6.0 – 9.0 |
| 2/20/2017 | WCL-11-D | pH | 9.1 | 6.0 – 9.0 |
| 1/15/2016 | WCL-08 | pH | 9.3 | 6.0 – 9.0 |
| 12/13/2015 | WCL-8 | pH | 9.3 | 6.0 – 9.0 |

### i. WCCSL's Sample Results Are Evidence of Violations of the General Permit

WCCSL's sample results demonstrate violations of the General Permit's discharge prohibitions, effluent limitations, and receiving water limitations set forth above.  The discharges

Notice of Violation and Intent To File Suit
August 24, 2020
Page 14

of pollutants reported above cause, or threaten to cause, pollution, contamination, or nuisance in violation of Sections III.C and VI.C. of the General Permit.

WCCSL's exceedances of EPA benchmarks are evidence of WCCSL's failure to implement BMPs that comply with the BAT/BCT requirements of the General Permit. These exceedances demonstrate that WCCSL has violated Section V.A. of the General Permit by failing to reduce or prevent discharges of pollutants in their storm water discharge in a manner that reflects best industry practice considering technological availability and economic practicability and achievability.

WCCSL's sample results are also evidence that WCCSL's discharges adversely affect human health or the environment in violation of Section VI.B of the General Permit. WCCSL's sample results demonstrate that WCCSL's discharges cause or contribute to violations of the Basin Plan discharge prohibitions and water quality standards discussed above in violation of Section VI.A of the General Permit. Specifically, WCCSL's discharges cause or contribute to violations of the Basin Plan's prohibition against discharging solid waste to surface waters or at any place where they would contact or whether they would be eventually transported to surface waters by placing waste materials associated with the composting operation throughout the Facility. The exceedances of pollutants measured in WCCSL's discharges cause or contribute to violations of the Basin Plan's narrative water quality standards for Floating Materials, Section 3.3.6, and Settleable Materials, Section 3.3.13. CSPA is informed and believes that WCCSL has known that its storm water contains pollutants at levels exceeding General Permit standards since at least August 24, 2015.

CSPA alleges that such violations occur each time storm water discharges from the Facility. **Attachment B** hereto, sets forth the specific rain dates on which CSPA alleges that WCCSL has discharged storm water containing impermissible levels of TSS, Fe, Al, COD, Zn, N+N, P, and pH in violation of the General Permit. General Permit, Discharge Prohibitions III.C and III.D, Receiving Water Limitations VI.A, VI.B. WCCSL may have had other violations that can only be fully identified and documented once discovery and investigation have been completed. Hence, to the extent possible, CSPA includes such violations in this Notice and reserves the right to amend this Notice, if necessary, to include such further violations in future legal proceedings.

## 5.    WCCSL Has Failed to Implement BAT and BCT

Dischargers must implement BMPs that satisfy the BAT/BCT requirements of the CWA and the General Permit to reduce or prevent discharges of pollutants in their storm water discharges. General Permit, Effluent Limitation V.A. To meet the BAT/BCT standard, dischargers must implement minimum BMPs and any advanced BMPs set forth in the General Permit's SWPPP Requirements provisions where necessary to reduce or prevent pollutants in discharges. *See* General Permit, Sections X.H.1-2.

WCCSL has failed to implement the minimum BMPs required by the General Permit, including: good housekeeping requirements; preventive maintenance requirements; spill and leak

Notice of Violation and Intent To File Suit
August 24, 2020
Page 15

prevention and response requirements; material handling and waste management requirements; erosion and sediment controls; employee training and quality assurance; and record keeping. Permit, Section X.H.1(a-g). WCCSL has further failed to implement advanced BMPs necessary to reduce or prevent discharges of pollutants in its storm water sufficient to meet the BAT/BCT standards, including: exposure minimization BMPs; containment and discharge reduction BMPs; treatment control BMPs; or other advanced BMPs necessary to comply with the General Permit's effluent limitation guidelines. General Permit, Sections X.H.2.

Each day that WCCSL has failed to develop and implement BAT and BCT at the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a). WCCSL has been in violation of the BAT and BCT requirements at the Facility every day since at least August 24, 2015.

### 6.    WCCSL Has Failed to Implement an Adequate Monitoring Implementation Plan

The General Permit requires dischargers to implement a Monitoring Implementation Plan. General Permit, Section X.I. As part of their monitoring plan, dischargers must identify all storm water discharge locations. General Permit, Section X.I.2.a. Dischargers must then conduct monthly visual observations of each drainage area, as well as visual observations during discharge sampling events. General Permit, Section XI.A.1 and 2.

Dischargers must collect and analyze storm water samples from two (2) storm events within the first half of each reporting year (July 1 to December 31) and two (2) storm events during the second half of each reporting year (January 1 to June 3). General Permit, Section XI.B. Section XI.B requires dischargers to sample and analyze during the wet season for basic parameters such as pH, total suspended solids ("TSS") and oil and grease ("O&G"), certain industry-specific parameters set forth in Table 2 of the General Permit, and other pollutants likely to be in the storm water discharged from the facility based on the pollutant source assessment. General Permit, Section XI.B.6. Dischargers must submit all sampling and analytical results via SMARTS within thirty (30) days of obtaining all results for each sampling event. General Permit, Section XI.B.11.

Facilities subject to federal storm water effluent limitation guidelines must collect and analyze samples from QSEs for each regulated pollutant specified in Section XI.B of the General Permit. General Permit, Section XI.D.1. Facilities subject to storm water ELGs are ineligible for the Representative Sampling Reduction in Section XI.C.4 of the General Permit. General Permit, Section XI.D.3.

WCCSL has failed to develop and implement an adequate Monitoring Implementation Plan. WCCSL has failed to collect samples from all discharge points during each sampling event by not collecting samples of discharges going into Pond B, and by not collecting from all perimeter discharge locations. WCCSL did not collect the required number of samples during the 2017/2018, 2018/2019, and 2019/2020 reporting periods. WCCSL has failed to conduct an adequate pollutant source assessment and identify all pollutants likely to be present at the

Notice of Violation and Intent To File Suit
August 24, 2020
Page 16

Facility. Therefore, WCCSL has failed to analyze all samples for all required parameters, including any unknown parameters that could only be determined by performing an adequate pollutant source assessment. WCCSL has also not analyzed all samples for all of the required parameters related to the ELGs pursuant to 40 C.F.R. §§ 445.21-23. WCCSL improperly composites and combines samples by combining samples from separate drainage areas into one reported sample.

Each day that WCCSL has failed to develop and implement an adequate Monitoring Implementation Plan is a separate and distinct violation of the Act and Permit. WCCSL has been in violation of the Monitoring Implementation Plan requirements every day since at least August 24, 2015.

### 7.    WCCSL Has Failed to Develop and Implement an Adequate Storm Water Pollution Prevention Plan

The General Permit requires dischargers to develop and implement a site-specific SWPPP. General Permit, Section X.A. The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) annual comprehensive facility compliance evaluation; and (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable. *See id.*

Dischargers must revise their SWPPP whenever necessary and certify and submit via the Regional Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") their SWPPP within 30 days whenever the SWPPP contains significant revisions(s); and, certify and submit via SMARTS for any non-significant revisions not more than once every three (3) months in the reporting year. General Permit, Section X.B.

CSPA's investigation indicates that WCCSL has been operating with an inadequately developed or implemented SWPPP in violation of General Permit requirements. WCCSL has further failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary, resulting in the Facility's numerous NAL exceedances across multiple pollutant parameters. The inadequacy of the development or implementation of the SWPPP is evidenced by the visibly deficient practices at the Facility, such as spreading waste materials in areas that drain to Pond B and to San Pablo Bay and San Pablo Creek.

WCCSL's SWPPP does not identify nor evaluate all sources of pollutants that may affect the quality of industrial storm water discharges because the SWPPP does not identify or evaluate the spreading of the waste materials throughout the Facility. This flaw in the SWPPP undermines each section of WCCSL's SWPPP because a major source of pollutants has not been factored into the Facility's storm water management. For example, the site map does not identify the areas where waste materials have been placed throughout the Facility, despite these being locations where materials are directly exposed to precipitation. General Permit, Section X.E.3.e. The pollutant source assessment is deficient because it fails to describe and assess this

Notice of Violation and Intent To File Suit
August 24, 2020
Page 17

source of potential pollutants.  General Permit, Section X.G.  Furthermore, the Lined Pond is not identified as a potential source of pollutants, despite the Regional Board's documentation of the Lined Pond being an actual source of pollutants in February of 2019.  None of the BMPs identified in the SWPPP address the waste materials spread throughout the Facility.  General Permit, Section X.H.

Each day WCCSL failed to develop and implement an adequate SWPPP is a violation of the General Permit.  The SWPPP violations described above were at all times in violation of Section X of the General Permit.  WCCSL has been in violation of these requirements at the Facility every day since at least August 24, 2015.

### 8.    WCCSL Has Failed to Comply with the Required Exceedance Response Actions

Section XII of the General Permit requires discharges to take certain actions if the results of their storm water monitoring samples exceed the Numeric Action Levels set forth in the Permit.  Dischargers enter Exceedance Response Action ("ERA") Level 1 if sampling results indicate an NAL exceedance.  General Permit, Section XII.C.  Dischargers enter Level 1 on July 1 following the reporting year during which the exceedance(s) occurred.  *Id*.  By October 1 following commencement of Level 1 status, dischargers are required to complete an ERA Level 1 Evaluation.  General Permit, Section XII.C.1.  By January 1 following the commencement of Level 1 dischargers are required to revise the SWPPP as necessary and implement any additional BMPs identified in the evaluation and certify and submit via SMARTS a Level 1 ERA Report prepared by a QISP.  General Permit, Section XII.C.2.  If sampling results indicate an NAL exceedance for an ERA Level 1 parameter, the discharger's status will change to Level 2, on July 1, for that parameter.  General Permit, Section XII.D.  By January 1 following the commencement of Level 2 status, the discharger shall complete a Level 2 ERA Action Plan.  General Permit, Section XII.D.1.  One year later, on January 1 following the submittal of the Level 2 ERA Action Plan, the discharger is required to complete a Level 2 ERA Technical Report.  General Permit, Section XII.D.2.

WCCSL entered into ERA Level 2 for aluminum, iron, chemical oxygen demand, and nitrate plus nitrite nitrogen on July 1, 2017.  WCCSL's ERA evaluations and reports are deficient because they fail to identify and address a key source of pollution at the Facility – the spreading of waste materials outside permit and control boundaries.  The June 30, 2019 ERA Level 2 Technical Report is further deficient because it fails to identify any improvements to the Lined Pond which resulted in discharges of contaminated storm water to Pond B, a water of the United States.

Each day WCCSL failed to adequately complete the required Exceedance Response Actions above is a violation of the General Permit.  The ERA violations described above were at all times in violation of Section XII of the General Permit.  WCCSL has been in violation of these requirements at the Facility every day since at least August 24, 2015.

Notice of Violation and Intent To File Suit
August 24, 2020
Page 18

## III.    Persons Responsible for the Violations

CSPA puts WCCSL on notice that they are the persons and entities responsible for the violations described above.  If additional persons are subsequently identified as also being responsible for the violations set forth above, CSPA puts WCCSL on formal notice that it intends to include those persons in this action.

## IV.    Name and Address of Noticing Parties

The name, address and telephone number of each of the noticing parties is as follows:

Bill Jennings, Executive Director
California Sportfishing Protection Alliance
3536 Rainer Avenue
Stockton, CA 95204
(209) 464-5067

## V.    Counsel

CSPA has retained legal counsel to represent it in this matter.  Please direct all communications to:

Andrew L. Packard                         Reed Super
William N. Carlon                         Edan Rotenberg
Law Offices Of Andrew L. Packard          Super Law Group
245 Kentucky Street, Suite B3             180 Maiden Lane, Suite 603
Petaluma, CA 94952                        New York, NY 10038
(707) 782-4060                            (212) 242-2355
andrew@packardlawoffices.com              reed@superlawgroup.com
wncarlon@packardlawoffices.com            edan@superlawgroup.com

William Verick
Klamath Environmental Law
Center
1125 16th Street, Suite 204
Arcata, CA 95521
(707) 630-5061
wverick@igc.org

## VI.    Conclusion

CSPA believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit.  We intend to file a citizen suit under Section 505(a) of the CWA against WCCSL and their agents for the above-referenced violations upon the expiration of the 60-day notice

Notice of Violation and Intent To File Suit
August 24, 2020
Page 19

period.  If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period.  We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.


Sincerely,

Andrew L. Packard
Law Offices of Andrew L. Packard
Counsel for CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

Notice of Violation and Intent To File Suit
August 24, 2020
Page 20

## SERVICE LIST


### VIA CERTIFIED MAIL

Andrew Wheeler, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

John Busterud, Regional Administrator
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105

William Barr, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Eileen Sobeck, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Michael Montgomery, Executive Officer
San Francisco Regional Water Quality Control Board
1515 Clay Street, Suite 1400
Oakland, CA 94612

**ATTACHMENT B**
**Notice of Intent to File Suit, WCCSL**
**Significant Rain Events,\* August 24, 2015 – August 21, 2020**

| | | | |
|---|---|---|---|
| November 2, 2015 | October 25, 2016 | February 9, 2017 | February 26, 2018 |
| November 9, 2015 | October 28, 2016 | February 10, 2017 | March 1, 2018 |
| November 15, 2015 | October 31, 2016 | February 16, 2017 | March 2, 2018 |
| November 24, 2015 | November 19, 2016 | February 17, 2017 | March 3, 2018 |
| December 21, 2015 | November 20, 2016 | February 18, 2017 | March 8, 2018 |
| December 22, 2015 | November 21, 2016 | February 19, 2017 | March 13, 2018 |
| December 24, 2015 | November 23, 2016 | February 20, 2017 | March 14, 2018 |
| January 5, 2016 | November 26, 2016 | February 21, 2017 | March 15, 2018 |
| January 6, 2016 | November 27, 2016 | February 22, 2017 | March 16, 2018 |
| January 7, 2016 | December 8, 2016 | March 5, 2017 | March 18, 2018 |
| January 9, 2016 | December 9, 2016 | March 6, 2017 | March 20, 2018 |
| January 13, 2016 | December 10, 2016 | March 21, 2017 | March 21, 2018 |
| January 15, 2016 | December 11, 2016 | March 22, 2017 | March 22, 2018 |
| January 16, 2016 | December 14, 2016 | March 24, 2017 | March 24, 2018 |
| January 17, 2016 | December 16, 2016 | March 25, 2017 | April 6, 2018 |
| January 18, 2016 | December 23, 2016 | April 7, 2017 | April 7, 2018 |
| January 19, 2016 | December 24, 2016 | April 8, 2017 | April 12, 2018 |
| January 20, 2016 | January 2, 2017 | April 12, 2017 | April 15, 2018 |
| January 22, 2016 | January 3, 2017 | April 13, 2017 | April 16, 2018 |
| January 23, 2016 | January 4, 2017 | April 16, 2017 | April 17, 2018 |
| January 24, 2016 | January 5, 2017 | April 17, 2017 | November 22, 2018 |
| January 30, 2016 | January 7, 2017 | April 18, 2017 | November 23, 2018 |
| February 18, 2016 | January 8, 2017 | April 20, 2017 | November 24, 2018 |
| March 5, 2016 | January 9, 2017 | June 9, 2017 | November 27, 2018 |
| March 6, 2016 | January 10, 2017 | October 20, 2017 | November 29, 2018 |
| March 7, 2016 | January 11, 2017 | November 9, 2017 | November 30, 2018 |
| March 11, 2016 | January 12, 2017 | November 16, 2017 | December 1, 2018 |
| March 12, 2016 | January 18, 2017 | November 17, 2017 | December 5, 2018 |
| March 13, 2016 | January 19, 2017 | November 26, 2017 | December 6, 2018 |
| March 14, 2016 | January 20, 2017 | November 27, 2017 | December 14, 2018 |
| March 21, 2016 | January 21, 2017 | January 4, 2018 | December 17, 2018 |
| April 9, 2016 | January 22, 2017 | January 6, 2018 | December 21, 2018 |
| April 10, 2016 | January 23, 2017 | January 8, 2018 | December 25, 2018 |
| April 14, 2016 | January 24, 2017 | January 9, 2018 | January 6, 2019 |
| April 22, 2016 | February 2, 2017 | January 18, 2018 | January 7, 2019 |
| May 6, 2016 | February 3, 2017 | January 19, 2018 | January 9, 2019 |
| May 7, 2016 | February 4, 2017 | January 22, 2018 | January 10, 2019 |
| May 8, 2016 | February 5, 2017 | January 25, 2018 | January 12, 2019 |
| October 15, 2016 | February 6, 2017 | January 26, 2018 | January 16, 2019 |
| October 16, 2016 | February 7, 2017 | January 27, 2018 | January 17, 2019 |
| October 17, 2016 | February 8, 2017 | January 28, 2018 | January 21, 2019 |

\* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.

**ATTACHMENT B**
**Notice of Intent to File Suit, WCCSL**
**Significant Rain Events,\* August 24, 2015 – August 21, 2020**

| | |
|---|---|
| January 22, 2019 | December 9, 2019 |
| January 31, 2019 | December 11, 2019 |
| February 2, 2019 | December 12, 2019 |
| February 3, 2019 | December 18, 2019 |
| February 4, 2019 | December 19, 2019 |
| February 5, 2019 | December 22, 2019 |
| February 9, 2019 | December 26, 2019 |
| February 10, 2019 | December 29, 2019 |
| February 12, 2019 | December 30, 2019 |
| February 13, 2019 | January 9, 2020 |
| February 14, 2019 | January 16, 2020 |
| February 15, 2019 | January 22, 2020 |
| February 25, 2019 | March 7, 2020 |
| February 26, 2019 | March 14, 2020 |
| February 27, 2019 | March 15, 2020 |
| March 2, 2019 | March 24, 2020 |
| March 5, 2019 | April 5, 2020 |
| March 6, 2019 | April 7, 2020 |
| March 9, 2019 | May 12, 2020 |
| March 11, 2019 | May 17, 2020 |
| March 20, 2019 | May 18, 2020 |
| March 22, 2019 | December 9, 2019 |
| March 23, 2019 | December 11, 2019 |
| March 26, 2019 | December 12, 2019 |
| March 27, 2019 | December 18, 2019 |
| March 28, 2019 | December 19, 2019 |
| April 2, 2019 | December 22, 2019 |
| April 5, 2019 | December 26, 2019 |
| April 16, 2019 | December 29, 2019 |
| May 15, 2019 | December 30, 2019 |
| May 16, 2019 | January 9, 2020 |
| May 18, 2019 | January 16, 2020 |
| May 19, 2019 | January 22, 2020 |
| May 22, 2019 | March 7, 2020 |
| November 26, 2019 | March 14, 2020 |
| November 27, 2019 | March 15, 2020 |
| December 1, 2019 | March 24, 2020 |
| December 2, 2019 | April 5, 2020 |
| December 4, 2019 | April 7, 2020 |
| December 7, 2019 | May 12, 2020 |
| December 8, 2019 | May 17, 2020 |

\* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT C – Project Description for Targeted Side-Slope Run-Off Study**
**(sampling to be undertaken in 2021-2022 Wet Season)**

Exhibit C

## Project Description for The Sampling of Representative Stormwater Runoff
## From Closed Class II Landfill Side-Slopes of the West Contra Costa Sanitary Landfill (WCCSL)

**OVERVIEW**

As part of ongoing settlement negotiations with Plaintiff California Sportfishing Protection Alliance (CSPA), WCCSL has developed this Project Description to be included within a draft Consent Decree describing a sampling and analysis plan to characterize the side slope runoff from the upper slope areas of the closed WCCSL Class II landfill, located below the compost top deck operation, on the north and northwest side slopes. The side slope areas to be sampled are shown in Attachment 1. The proposal will provide an analytical basis to characterize the storm water runoff from the sample areas, including determining whether and to what extent there may be spatial variation in the run-off quality, as there is likely variation in the location of organic materials on the side-slopes that could potentially affect water quality.

Based on the site topography (drainage contours), the sampling and analysis plan will utilize 8 discrete zones where stormwater can be collected. The proposed zones for sampling are shown on Attachment 1. There are 8 sampling points shown, one for each zone, noted as "SP 1", etc. on Attachment 1.

The topography will be field verified and slope conditions checked to ensure all of the stormwater flows to the desired sampling point. In addition, sampling points will need to be installed/enhanced. Also, the toe of each area needs to be checked to ensure stormwater does not drain to other areas, and if so, field repairs via installation of ditches or wattles should be made to direct water to the desired location.

Exhibit C

**PROJECT WORK**

1. **Confirmation of the sampling zones and staking of sampling locations** – Field walk with a hand-held GPS device to confirm approximate position and location of the drainage breaks identified in Attachment 1.  During field confirmation, stake out and delineate the 8 different zones, identify location of the catch basins in each zone for stormwater, and identify any need for drainage ditches and wattles to capture runoff for sampling. The sampling location will be created by using wattles to delineate the area where the natural low point occurs, as generally shown in Attachment 2.

2. **Preparation of a Workplan** - Following the field walk, develop a detailed workplan outlining the specific sampling locations, creation of the sample collection points as shown in Attachment 2, and sampling quality control plan.

3. **Procurement of Wattles and other Field Supplies** - Procure adequate lineal footage of wattles and other supplies. The wattles will be utilized to mark zone boundaries and direct stormwater from each area to the designated sampling location.

4. **Installation of Wattles and Sampling locations** Approximately 3 days of field work to install the wattles and/or make minor adjustments to zone boundaries to ensure that the stormwater runoff is draining towards the sampling locations. Approximately 1,000 feet of wattles are necessary, including wattles for the sampling points. We estimate 3 days of field work to perform the necessary installation of wattles.

5. **Qualifying Storm Event Stormwater Sampling-** Collect stormwater samples during qualifying stormwater events (QSEs) and submit the samples to a designated laboratory under a chain-of-custody.  The sampling will include up to 2 duplicates and a trip blank. Project scope to be samples taken during 3 QSEs, if feasible based on rainfall.

Exhibit C

6.  **Analytical Program-** The following parameters will be applied to the sampling program:

    pH
    TSS
    Oil & Grease
    Chemical Oxygen Demand (COD)
    Aluminum
    Iron
    Lead (H)
    Zinc (H)
    Nitrate plus Nitrite
    Nitrogen
    Phosphorous

    Samples will be taken for the submitted to a certified laboratory.

7.  **Data Tabulation -** Once data is obtained from the laboratory, WCCSL will generate a table tabulating the data, to be shared with Plaintiff.

8.  **Report –** WCCSL will prepare a preliminary draft report within 30 days of receiving the final analytical lab data for the side slope QSE samples and provide a copy of the preliminary draft report to Plaintiff for its review and comment. Plaintiff will provide comments and input, in its discretion, within 14 days of receiving the WCCSL preliminary report. The parties will meet and confer after the preliminary report has been circulated, to review the results and discuss potential options concerning side slope runoff and any proposed best management practices (BMPs).

Exhibit C

ATTACHMENT 1



Exhibit C

ATTACHMENT 2

Attachment No. 2



STRAW WATTLES (TYP)

1" Ø, 1 FT PVC PIPE (TYP)

STORMWATER SAMPLING POINT

LANDFILL SLOPE (VARIES)

WOODEN STAKE (TYP)

ACCUMULATED STORMWATER
(WATER LEVEL VARIABLE)

STORMWATER SAMPLING POINT DETAIL (TYP)
DRAWING NOT TO SCALE

STORMWATER SAMPLING POINT

1"Ø, 1 FT. PVC PIPE (TYP)

WOODEN STAKE (TYP)

STRAW WATTLE (TYP)

STORMWATER
BASIN
BOUNDARY

ACCUMULATED STORMWATER
(WATER LEVEL VARIABLE)

CONTOUR (TYP)

STORMWATER SAMPLING POINT PLAN VIEW (TYP)
DRAWING NOT TO SCALE

Last Saved: June 16, 2021 2:00:40 PM by tmsll Drawing path:
N:\Oakland\Projects\Republic\WCCSL_Class II Landfill\CL2 SW Analysis\West County Landfill Sketch 6.15.2021_recover_recover.dwg

REVISIONS



SLR INTERNATIONAL CORPORATION
110 11th STREET
OAKLAND, CA 94607
Tel: (510) 451-1761

global environmental solutions

THIS DRAWING AND ITS CONTENTS ARE CONFIDENTIAL AND SUBJECT TO RETURN ON DEMAND AND MAY
NOT BE COPIED OR DISCLOSED TO ANY THIRD PARTY OR USED DIRECTLY OR INDIRECTLY FOR ANY OTHER
PURPOSE THAN AS EXPRESSLY DETERMINED IN WRITING BY SLR CONSULTING (Pty) Ltd.



| CLIENT: | WEST CONTRA COSTA SANITARY LANDFILL, INC. | PLOT DATE: |
| PROJECT: | WEST COUNTY LANDFILL | SHEET: 1 |
| TITLE: | TYPICAL DRAINAGE AREA SAMPLING POINT | REV: |

| | DATE | NAME |
| DRAWN: | 6/15/21 | TM |
| CHECKED: | 6/15/21 | ZK |
| RE-DRAWN: | 6/15/21 | MB |
| RE-CHECKED: | 6/15/21 | MB |
| APPROVED: | XX/XX/XX | XX |

SLR PROJECT NUMBER:

| NO | DATE | DESCRIPTION | BY | CHK'D | SEAL |

1

**EXHIBIT D**
**Testing Parameters**

2

| Parameter | Test Method | Reporting Units | Evaluation Level | Instantaneous Maximum NAL |
|-----------|-------------|-----------------|------------------|---------------------------|
| pH | See Section XI.C.2 of the General Permit | pH units | N/A | Less than 6.0 Greater than 9.0 |
| Total Suspended Solids | SM 2540-D | mg/L | 100 | 400 |
| Oil & Grease | EPA 1664A | mg/L | 15 | 25 |
| Chemical Oxygen Demand (COD) | SM 5220C | mg/L | 120 | |
| Biological Oxygen Demand (BOD) | SM 5210-B | mg/L | 30 | |
| Aluminum | EPA 200.8 | mg/L | 0.75 | |
| Iron | EPA 200.7 | mg/L | 1.0 | |
| Lead (H) | EPA 200.8 | mg/L | 0.069* | |
| Zinc (H) | EPA 200.8 | mg/L | 0.11* | |
| Copper (H) | EPA 200.8 | mg/L | 0.0123* | |
| Nitrate plus Nitrite Nitrogen | SM4500-NO3-E | mg/L as N | 0.68 | |

SM – Standard Methods for the Examination of Water and Wastewater, 18th edition
EPA – U.S. EPA test methods
(H) – Hardness dependent

*These values assume a hardness value of 75 mg/L, based on historical hardness data from the

United States Geological Survey California Water Science Center:

24

| All Units mg/L | Benchmark Values (mg/L, total) | | | |
|---|---|---|---|---|
| | Lead | Zinc | Copper | |
| 0-25 mg/L | 0.014 | 0.04 | 0.0038 | |
| 25-50 mg/L | 0.023 | 0.05 | 0.0056 | |
| 50-75 mg/L | 0.045 | 0.08 | 0.0090 | |
| 75-100 mg/L | 0.069 | 0.11 | 0.0123 | |
| 100-125 mg/L | 0.095 | 0.13 | 0.0156 | |
| 125-150 mg/L | 0.122 | 0.16 | 0.0189 | |
| 150-175 mg/L | 0.151 | 0.18 | 0.0221 | |
| 175-200 mg/L | 0.182 | 0.20 | 0.0253 | |
| 200-225 mg/L | 0.213 | 0.23 | 0.0285 | |
| 225-250 mg/L | 0.246 | 0.25 | 0.0316 | |
| 250+ mg/L | 0.262 | 0.26 | 0.0332 | |

25